# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**LIZBETH M. FERRER MARRERO**,

Plaintiff,

v.

**MISEY RESTAURANT, INC.; d/b/a RESTAURANTE RAICES; et. al.,**

Defendants.

CIV. NO. 17-1911 (MDM)

## OPINION AND ORDER

Plaintiff Lizbeth Ferrer Marrero ("Plaintiff" or "Ferrer"), a former temporary employee, brings this action against Misey Restaurant, Inc. d/b/a Restaurante Raíces ("Raíces") and Jobs for You, Inc. ("JFY") (hereinafter collectively referred to as "Defendants") alleging pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1962, 42 U.S.C. §§ 2000e-5 et seq. Ferrer also asserts supplemental claims under Puerto Rico law. More specifically, Plaintiff claims that upon her return from maternity leave, Defendants illegally terminated her temporary employment assignment because of her pregnancy and because she complained that Defendants did not provide her with an adequate space and reasonable time to express breastmilk.

Presently before the Court are Raíces' and JFY's motions for summary judgment, respectively (Docket Nos. 102 and 107,) which Plaintiff opposed (Docket No. 114). Raíces and JFY respectively replied to Plaintiff's opposition. (Docket Nos. 129 and 132). Plaintiff filed a sur-reply exclusively as to JFY's motion (Docket No. 138). In light of the findings of fact and legal discussion set forth below, the Court **GRANTS in part** and **DENIES in part** Raíces' motion for summary judgment (Docket No. 102) and **GRANTS in its entirety** JFY's motion for summary judgment (Docket No. 107).

## I.    <u>Summary Judgment Standard</u>

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see* Fed. R. Civ. P. 56(a). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, . . . and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" *Iverson v. City of Boston*, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (citation and internal quotation marks omitted).

The moving parties, in this case Raíces and JFY, respectively, bear the initial burden to demonstrate the lack of evidence to support the nonmoving party's case. *Celotex,* 477 U.S. at 325. To defeat summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. *Id*. If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. *Id.* at 248.

In cases like this one, which involve questions of motive or intent, the movant's burden is particularly rigorous. *Medina v. Adecco*, 561 F. Supp. 2d 162, 165–66 (D.P.R. 2008). Unsettled issues regarding motive and intent will often preclude summary judgment. *See Lipsett v. Univ. of P.R.,* 864 F.2d 881, 895 (1st Cir. 1988). Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." *Forestier Fradera v. Mun. of Mayaguez,* 440 F.3d 17, 21 (1st Cir. 2006) (quoting *Benoit v. Technical Mfg. Corp.,* 331 F.3d 166, 173 (1st Cir. 2003)). The court should deny summary judgment when the nonmoving party "can point to specific facts detailed in affidavits and depositions—that is, names, dates, incidents, and supporting

testimony—giving rise to an inference of discriminatory animus." *Lipsett,* 864 F.2d at 895.

## II.     Materials Properly Considered on Summary Judgment

In this case, both defendants, Raíces and JFY, offer declarations in support of their respective motions for summary judgment. Plaintiff objected to the use of Defendants' declarations, mainly arguing that they were not disclosed to her during discovery. Similarly, to oppose Defendants' motions for summary judgment, Plaintiff offers various declarations of third-party witnesses, none of which come from Ferrer herself. Defendants, in turn, objected to the declarations presented by Plaintiff because they did not comply with the legal requirements of unsworn statements offered to oppose a summary judgment motion. The Court will briefly address the validity of the relevant declarations offered by the parties.

On summary judgment, Rules 56(a) and (b), provide that claimants and defendants may move for summary judgment "with or without supporting affidavits." Fed. R. Civ. P. 56(a) and (b). A party asserting that a particular fact is undisputed must support that assertion "by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations. . ., admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A); *Ortiz-Osorio v. Municipality of Loiza*, 128 F. Supp. 3d 442, 446 (D.P.R. 2015). The import of these subsections is that, regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as *whatever* is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied. *Celotex*, 477 U.S. at 323–24.

One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Id*. Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves. *Celotex,* 477 U.S. at 323–24. All materials relied on to support a factual position must be admissible as evidence, *Horta v. Sullivan,* 4 F.3d 2, 8 (1st Cir.1993), or capable of being reduced to an

admissible form. *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence").

When, like here, the parties use affidavits or declarations as support, they "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). *See also* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter").

Furthermore, under federal law, to support or oppose a motion for summary judgment, a party may offer an unsworn statement that is *signed under penalty of perjury* in compliance with 28 U.S.C. Sec. 1746, in lieu of a sworn statement or affidavit. *See* 28 U.S.C. § 1746;[1] *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc.*, 982 F.2d 686, 689–90 (1st Cir. 1993) (*citing* 28 U.S.C. § 1746); *Maldonado-Ortiz v. Lexus de San Juan*, 775 F. Supp. 2d 389, 396 (D.P.R. 2011); *see also Peters v. Lincoln Elec. Co.,* 285 F.3d 456, 475 (6th Cir.2002) (Affidavits need not be notarized to be cognizable on summary judgment so long as they are made under penalties of perjury in accordance with 28 U.S.C. § 1746); *Pfeil v. Rogers,* 757 F.2d 850, 859 (7th Cir.1985) (holding that an affidavit failing to satisfy the "technical, non-substantive requirements of execution" may be considered as part of a party's opposition to a motion for summary judgment provided the affidavit complies with 28 U.S.C. § 1746), *cert. denied,* 475 U.S.

---

[1] In relevant part, 28 U.S.C. § 1746 provides:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same . . . such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true *under penalty of perjury*, and dated, in substantially the following form:

> . . . .

If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)."

1107 (1986); *Davis v. Frapolly,* 756 F.Supp. 1065, 1067 (N.D.Ill.1991) (holding that unsworn statements signed under penalty of perjury may be considered as evidence in support of a motion for summary judgment).

Against that legal backdrop, the Court analyses the validity of the statements offered by the parties, which the Court deems to have included relevant information for summary judgment purposes and those which do not constitute cumulative evidence.

The Court begins with Ferrer's proffered affidavits. In support of her Opposition to both Defendants' motions for summary judgment, Ferrer submitted various "affidavits." In pertinent part, and most relevant to Ferrer's claims, she presented an unsoworn declaration purportedly signed by Dianira Carrión, one of Ferrer's past supervisors at Raíces. (Docket No. 115-4; 115-5). At first glance, the Court can easily dispense with Carrión's "declaration" because it does not meet the applicable legal requirements.

First, it is a handwritten document titled "Interview: Dianira Carrión Mauras" and it appears to have been the result of interview questions to Carrión. Second, it fails to comply with the technical requirements that it be made based on personal knowledge, admissible evidence, and it fails to establish that the declarant is competent to testify on the matters stated. *See* Fed. R. Civ. P. 56(c)(4). Third, and most importantly, Carrión's unsworn declaration was *not* signed under penalty of perjury, thereby failing to satisfy the requirements of 28 U.S.C. § 1746. That alone is fatal to Plaintiff's proffered declaration by Carrión.

Accordingly, because Carrión's unsworn declaration does not comply with the applicable legal requirements, the Court cannot consider it as evidence in support of Plaintiff's opposition to both motions for summary judgment.

Plaintiff also offered a handwritten declaration by Quiriat Crespo Acevedo ("Crespo"). (Docket No. 115-11). Crespo's statement fails to comply with the technical requirements that it be made based on personal knowledge, admissible evidence, and indicate that the declarant is competent to testify on the matters stated. Further, and most significantly, the declaration was *not* signed under penalty of perjury, therefore it does not meet the requirements of 28 U.S.C. § 1746. Since Crespo's unsworn declaration

does not comply with the pertinent legal requirements, it cannot be considered as evidence by the Court.

In addition, Plaintiff offered a statement by Bianca Ortíz ("Ortíz,") another one of Ferrer's past supervisors at Raíces. (Docket No. 115-7). Different from the statements discussed above, Ortíz' statement *was* singed under penalty of perjury so, it met the requirements of 28 U.S.C. § 1746. It thus surpasses the legal requirements' hurdle. Notwithstanding that, however, Defendants object to this statement because some of the information included therein contradicted some of the statements made by Ortíz during her deposition. As such, Defendants argue that her statement should be stricken because it constitutes a "sham affidavit" prepared post-summary judgment by the nonmoving party for the purpose of "creating" an issue of fact, where one does not really exist, to defeat summary judgment. Significantly, Plaintiff did not offer a response to Raíces' request to strike Ortíz' statement for constituting a "sham affidavit." After reviewing the relevant portions of Ortíz' deposition, and the proffered declaration, the Court agrees with Defendants that some portions of Ortíz' statement directly contradict certain statements she made in her prior deposition.

Ortíz' statement is questionable because, for example, during her deposition, when asked by Defendants about the time afforded to Ferrer for milk extraction, Ortíz unequivocally stated that Ferrer was given the time necessary for that purpose. (Docket No. 103-2 at 16). In contrast, however, Ortíz' post summary judgment affidavit contradicts her prior deposition testimony because it states that while Ferrer was authorized between half an hour and one hour for milk extraction, it was not a reasonable amount of time for Ferrer "because of traffic jams."[2] (Docket No. 115-7). Ortíz curiously did not mention anything to that effect during her deposition, even though she was specifically questioned on the matter. Mindful that Ortíz was, in fact, deposed and questioned on the very same topics included in her post summary judgment declaration, the "additional information" included in her latter affidavit, which differs from her deposition testimony, raises some suspicion.

---

[2] As will be discussed below, Ortíz' reference to "traffic jams" stems from the fact that upon her return from maternity leave, Ferrer drove from Raíces to her home in Carolina to express breastmilk and then drove back to work at Raíces.

Accordingly, and erring on the side of caution, the Court did not consider as evidence Ortíz' declaration, rather, it considered only the statements made by Ortíz during her deposition, which were either uncontested or conclusively supported by the record evidence.

Now, turning to the statements offered by JFY in support of its motion for summary judgment, JFY offers unsworn declarations by Bárbara Torres and Betzaida Pérez. In her opposition, Plaintiff objects to the use of both statements, arguing that they were produced for the first time with the motions for summary judgment and were not disclosed during discovery. For the reasons espoused below, Plaintiff's objection to JFY's statements cannot prevail.

First, as explained above, Rule 56(c) allows a party asserting that a fact cannot be genuinely disputed to support such assertion based on affidavits or declarations, subject to their compliance with the applicable legal requirements. It is uncontested that both statements by JFY provide specific factual information based on the declarant's personal knowledge and meet all legal requirements, including compliance with 28 U.S.C. § 1746. Second, and contrary to Plaintiff's assertion, the discovery rules require parties to produce documents that *already* exist. Indeed, both declarations were prepared in order to support JFY's motion for summary judgment and, as such, did not exist during discovery. Third, JFY listed Torres and Pérez in its initial disclosures as individuals likely to have discoverable information that JFY could use to support its claims or defenses. Plaintiff, however, chose not to perform any discovery regarding Torres's and Pérez's knowledge of the facts relevant to this case. It should therefore not come as a surprise to Plaintiff that JFY offered statements by both individuals in support of summary judgment. Plaintiff's choice not to conduct discovery as to Torres or Pérez cannot deprive JFY from using their witnesses to substantiate its claims in favor of summary judgment.

Based on the foregoing, because both statements comply with the applicable legal requirements, and Plaintiff failed to offer a compelling legal reason to strike them, the statements signed under penalty of perjury by Torres and Pérez are valid and will be considered by the Court as evidence in support of JFY's motion for summary judgment.

To conclude, Raíces also offered various statements in support of summary judgment. In relevant part, Raíces offered a statement by Nydia Ayala, Raíces' co-owner, which Plaintiff objected to on the same grounds that it objected to JFY's statements: that it was produced for the first time with Raíces' motion for summary judgment and was not disclosed during discovery. Raíces argues that declarations in support of summary judgment, which do not exist during discovery, are not required to be produced before the motion is submitted. In this case, the Court agrees.

First, Ayala's statement provides specific factual information based on her personal knowledge. Second, Plaintiff does not challenge the fact that Ayala's statement meets all federal legal requirements. Third, the information set forth in Ayala's statement is entirely relevant and substantiates Raíces' factual claims and defenses against Plaintiff's allegations. Specifically, the statement directly contradicts Plaintiff's averments regarding discrimination and, while the Court will not make any credibility determinations at this time, a "party's own affidavit, containing relevant information of which he has first-hand knowledge, may be self-serving, but it is nonetheless competent to support or defeat summary judgment." *Cadle Co. v. Hayes,* 116 F.3d 957, 961 n. 5 (1st Cir.1997), *citing Nereida–González v. Tirado–Delgado,* 990 F.2d 701, 706 (1st Cir. 1993).

Based on the foregoing, and because the statement complies with the requirements of the federal rules, the Court will consider Ayala's statement as evidence in support of Raíces' motion for summary judgment.

### III.    <u>Factual Background</u>

The following factual findings are either undisputed or conclusively supported by the evidentiary record.[3]

JFY is a company that provides temporary and permanent staffing for its clients. On June 19, 2013 Raíces and JFY executed a "Temporary Employment Service Contract," though which JFY would supply Raíces with employees to work at Raíces'

---

[3] Pursuant to Local Rule 56, the Court will only deem as genuinely opposed those statements of material facts which the objecting party properly denied or qualified in strict compliance with Local Rule 56(c). The Court also credits only facts properly supported by accurate record citations. *See* Local Rule 56(e). The Court has disregarded all arguments, conclusory allegations, speculation, and improbable inferences disguised as facts. *See Forestier Fradera v. Municipality of Mayaguez,* 440 F.3d 17, 21 (1st Cir. 2006); *Medina-Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir. 1990).

restaurants, based on the company's business needs.[4] Bárbara Torres, a former JFY Human Resources representative, was the liaison between JFY and Raíces and between JFY and the temporary employees placed to work at Raíces.

One day, Ferrer's mother went to have lunch at Raíces in Old San Juan and met one of their managers. Ferrer's mother told the manager that she had a daughter who worked in restaurants and asked if her daughter could fill out a job application to work at Raíces. As a result, Ferrer called Raíces and talked to Dianira Carrión ("Carrión,") Raíces' Director of Operations, who instructed Ferrer to contact JFY.

On February 12, 2014, Ferrer completed a job application with JFY.[5] Ferrer received a copy of JFY's employment handbook. JFY's handbook states, in pertinent part, that "[a]ll work is temporary. Contracts are signed on a monthly basis until the client company indicates otherwise."[6]

Raíces wanted Ferrer to start working effective February 13, 2014. Ferrer signed a one-month "Temporary Employment Contract" with JFY, by which she was placed to work as a temporary employee at Raíces, beginning on February 13, 2014. Ferrer's first temporary contract expired on February 28, 2014. At the beginning of her temporary employment, Ferrer received a copy of Raíces' employment handbook.

Both JFY and Raíces have Equal Employment Opportunity ("EEO") and breastfeeding policies included in their respective employment handbooks. Ferrer acknowledged that she received both JFY's and Raíces' employment handbooks.

Ferrer was placed at the Raíces restaurant in Old San Juan and was assigned to work as a "runner" by Raíces. Though Ferrer began working at Raíces as a "runner," Raíces later assigned her to the position of "expo." Raíces established Ferrer's daily working conditions. Raíces assigned Ferrer's work schedule and shifts. Raíces' employees supervised and evaluated Ferrer's daily performance. Raíces completed Ferrer's evaluations. Ferrer worked at Raíces' locations, first in Old San Juan and later in Hato Rey. Raíces supplied uniforms to the temporary employees placed by JFY, including Ferrer. Raíces determined whether Ferrer would work overtime.

---

[4] Docket No. 108-1 at 7.
[5] Docket No. 108-1 at 12.
[6] Docket No. 108-1 at 23.

Ferrer, like all employees at Raíces, had to "punch in" at the beginning of her shift and "punch out" at the end of it using a digital assistance clock located at the restaurants. Ferrer also had to register her breaks using the same clock. She had to enter her employee number to log in her hours. Ferrer received a copy of every payment report. JFY signed Ferrer's salary checks and, ordinarily, paid Ferrer for her work at Raíces. JFY provided employees like Ferrer a notice regarding their online payroll payments.

Pursuant to JFY's practice, Ferrer had to sign a temporary contract for every month for which she was going to work at Raíces. Ferrer signed all her monthly contracts with Bárbara Torres at JFY's office. Torres handled Ferrer's employment matters with JFY. Every time Ferrer contacted JFY, she spoke with Torres.

In December 2014, Raíces transferred Ferrer from the Old San Juan to the Hato Rey restaurant, which had recently opened. According to Ferrer, when she was transferred to Raíces in Hato Rey, Carrión told her that she was going to receive a salary increase and become a permanent employee of Raíces.[7]

On January 9, 2015, Bárbara Torres sent an email to Raíces' representative to confirm whether Ferrer would become a permanent employee effective January 12, 2015.[8] Raíces' representative responded on January 12, 2015 that the "promotion was not approved" and requested that JFY notify Ferrer. *Id*.

Ferrer learned of her pregnancy in January 2015, which she informed to JFY and Raíces. According to Ferrer, Carrión did not welcome the news because she commented "I will kill you" upon learning of Ferrer's pregnancy.[9]

Ferrer requested certain pregnancy-related changes in her working conditions, all of which Raíces granted. During her pregnancy, Ferrer requested leave to attend weekly medical appointments. Raíces complied with Ferrer's request. Raíces also granted Ferrer's requests for days off and vacation time. After her baby was born, in response to another request by Ferrer, Raíces only scheduled Ferrer to work during the

---

[7] Docket No. 103-3 at 38.
[8] Docket No. 133-2 at 103-104.
[9] Docket No. 103-3 at 39.

day shifts; no night shifts were assigned to Ferrer because she had no one to care for her baby.

On August 21, 2015, Bárbara Torres informed Raíces that Ferrer would be on maternity leave from August 24, 2015 to October 18, 2015. Ferrer gave birth to her son on August 25, 2015. After Ferrer's maternity leave expired, she requested vacation leave from October 19 through October 31, 2015. Ferrer's vacation leave request was granted.

Ferrer returned to work at Raíces in early November 2015. Ferrer told Raíces' representatives of her intention to breastfeed her newborn child.[10] Plaintiff said that on her first day back from maternity leave, she was not provided a break for milk extraction so, she spoke with the manager on shift to inquire as to the space where she could express breastmilk. It is Ferrer's understanding that her breastfeeding intentions were met with hostility by the owners of Raíces, Erick Ujaque and Nydia Alaya. Sometime in November or December 2015, Ferrer says she talked with Erick Ujaque and Nydia Ayala about not having a space to express breastmilk. According to her, the only response she received was that Nydia Ayala did not want her to express breastmilk at the administrative office and that Ferrer should go to the bathroom or her car.

Raíces identified the place that was offered to Ferrer for milk extraction during her shifts. In the Raíces restaurant at Hato Rey, there is no designated milk extraction room. According to one of Ferrer's supervisors, milk extraction was usually done at the administrative office because it is a private space.[11]

According to Carrión, she spoke with Nydia Ayala, Raíces' Vice President and owner, about Ferrer's desire to extract her breastmilk and Ayala said that Ferrer could not express breastmilk in the office. Pursuant to Carrión's testimony during her deposition, she insisted that Raíces needed to identify a place where Ferrer could express breastmilk and, allegedly, Ayala responded that Ferrer could do it in the bathroom, which was a public bathroom. Carrión stated that she told Ayala that a public bathroom was not appropriate, and that Ayala replied that Ferrer could express breastmilk in the car because when she was younger she expressed her own breastmilk

---

[10] More specifically, Ferrer said that she told all shift supervisors at the Hato Rey restaurant, she named specifically Jessy Viello, the shift's managerial personnel, and mentioned that she told the owners of the restaurant, Carrión and Ortíz.

[11] Docket No. 103-2 at 54.

in the car. Carrión also said that she subsequently talked with Erika Ujaque from Raíces' Human Resources about said discussion, but that Ujaque did not provide her with a definitive answer and told Carrión to do what Ayala had indicated. Carrión stated that she then informed Ferrer of what was discussed, and Ferrer became annoyed but accepted the information "in a way."

Offering a somewhat different account, Ferrer stated during her deposition that Carrión told her that she could express breastmilk wherever she wanted.[12] Ferrer also stated that on one occasion, she spoke with Erick Ujaque to inform him that she was not provided a space to extract breastmilk and that Ujaque told her that he was going to speak to Ferrer's managers to give her "fifteen minutes in the office."

According to Ferrer, during her break period, she would drive to her home in Carolina to express breastmilk.[13] During that time, she also had lunch. It would take ten or fifteen minutes per breast for Ferrer to express breastmilk. Ferrer also needed time to prepare the breast pumping parts and set the pumping machine. Ferrer stated that there were times when managerial staff from Raíces would call her and ask her where she was going or where she was.[14] She did not offer additional details like who asked her and when. Ferrer admitted during her deposition that she was granted time for milk extraction, "but not enough." According to Ortíz, one of Ferrer's supervisors at Raíces in Hato Rey, Ferrer was granted the time necessary to express breastmilk.[15]

---

[12] Docket No. 103-3 at 42.
[13] Docket No. 103-2 at 55.
[14] Docket No. 103-2 at 55.
[15] Docket No. 103-2 at 16.

Regarding Ferrer's claim that she was not granted reasonable time for milk extraction, Raíces argues that it offered Ferrer sufficient time for that purpose in compliance with applicable law, namely, that if afforded Ferrer no less than 1 hour per day, despite the fact that she was not a full-time employee. Raíces further requests summary judgment in its favor on this claim, alleging that Ferrer's allegation is not supported by the evidentiary record nor admissible evidence. The Court agrees. To survive summary judgment on this claim, the only evidence offered by Ferrer were the statements by Carrión and Ortíz, which the Court previously held cannot be considered as evidence in support of Ferrer's contentions. Ferrer did not offer any additional evidence to challenge Raíces' argument, not even her own deposition testimony, nor documentary evidence like, for example, the official business records of Ferrer's breaks.

The Court can quickly dispense with Ferrer's argument because she fails to point to any admissible evidence to support her claim that she was not provided sufficient time for milk extraction in violation of applicable law. Ferrer is left only with her conclusory statement that she was not offered "enough" time to express breastmilk, which is not sufficient because at the summary judgment stage, Plaintiff must "set forth *specific facts* showing that there is a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). Giving Ferrer the benefit of all reasonable inferences, there is simply no evidence to support Ferrer's

According to Nydia Ayala, co-owner of Raíces, in May 2015, she spoke casually to Ferrer about her pregnancy. Ayala claims to be a breastfeeding advocate and promotor of nursing mothers. According to Ayala, she told Ferrer how important breastfeeding was for her personally and she told Ferrer that when they started the restaurant, she breastfed in her car. In that same conversation, Ayala said that she told Ferrer that since Raíces did not have a designated breastfeeding room at the restaurant, Ferrer could use the administrative office, which was private. According to Ayala, Ferrer told her that she preferred to express breastmilk at her baby's day care center or her home and that she would make other arrangements with JFY. Ayala indicated that she supported Ferrer's decision.

Ayala stated that it is "absolutely false" that she told Ferrer to express breastmilk in the bathroom or her car. According to Ayala, at some point, the Human Resources division at Raíces informed her that Ferrer had been authorized by JFY to go to her baby's day care facility to express breastmilk. Pursuant to Ayala's testimony, Raíces abided by that decision.

On November 28, 2015, Ferrer completed an application for an "internal position" as a waitress in Raíces.[16] As of that date, she had been working as a "runner."

According to Bárbara Torres from JFY, on December 2, 2015, she asked Ferrer to meet her in JFY's offices to discuss a disciplinary matter brought to her attention by Raíces. It had to do with Ferrer's problems with timeliness. During such meeting, Ferrer told Bárbara Torres that Raíces did not provide her with the time nor space to breastfeed or express breastmilk.[17] Ferrer also told Torres that she spoke with the managers at Raíces but that no one offered her an appropriate space to express breastmilk. Ferrer said that she was going to her home in Carolina during her break to express breastmilk because she did not like the place offered by Raíces for that purpose.

Bárbara Torres said that this was the first and only time that Ferrer complained about the space Raíces provided to her for milk extraction. Torres also stated that immediately after this meeting, she notified Betzaida Pérez, JFY's Manager, of the

---

contention or create a triable issue to withstand summary judgment. Accordingly, any claim by Ferrer related to insufficient *time* to express breastmilk is DISMISSED with prejudice.

[16] Docket No. 103-6 at 2.

[17] Docket No. 103-3 at 17.

information that Ferrer shared with her. Specifically, Torres told Pérez about Ferrer's dissatisfaction with the place offered to her by Raíces for milk extraction and the fact that Ferrer was going to her home during her break to express breastmilk. According to Pérez, on that same day, December 2, 2015, she called Raíces and spoke with Liam Morales, Misey's Comptroller, who explained to Pérez that Ayala, Raíces' owner, was a breastfeeding supporter and that she offered Ferrer the administrative office to express breastmilk. Also, according to Pérez, she spoke with Carrión, who confirmed that Ferrer was offered Raíces' administrative offices or the employee's resting room for milk extraction, but that Ferrer chose to go to her home to express breastmilk. Pérez said that Carrión represented to her that Raíces was providing Ferrer with the time necessary for milk extraction and an adequate space.

On December 7, 2015, a Medical Certificate was issued to Ferrer indicating that she was "breastfeeding 100%" her baby boy and requesting that Ferrer be provided "adequate time and a suitable place for breast milk extraction." Ferrer gave the Medical Certificate to Jessy Viello, one of Raíces' Managers.

Ferrer's last temporary employment contract expired on December 31, 2015. Raíces did not renew Ferrer's temporary employment contract after that date.

During her temporary employment with Raíces, Ferrer was subjected to various disciplinary actions. Ferrer admittedly received several admonishments and was suspended from employment on at least one occasion. There was also an incident involving Ferrer's attitude on January 15, 2015, and an incident on April 23, 2015 where Ferrer was verbally reprimanded for having an issue with customer service. Ferrer also received various disciplinary actions regarding her untimeliness. In 2015 alone, Ferrer admitted that she arrived late to work on sixteen (16) occasions.[18] The record shows that Ferrer was reprimanded on at least eleven (11) occasions for her untimeliness.[19]

---

[18] Docket Nos. 103-6 p. 3-6; 103-2 p. 73.

[19] Lateness Report from March 18, 2015; Lateness Report from March 23, 2015; Lateness Report from April 3, 2015; Lateness Report from April 7, 2015; Lateness Report from April 22, 2015; Lateness Report from April 24, 2015; Verbal admonishment from April 29 for arriving late to her shift on four different occasions during the month of April 2015; on May 29, 2015 Raíces sent an email to JFY notifying Ferrer's lateness pattern during the month of May 2015; Verbal admonishment from June 1 for arriving late on May 22, 23 and 27; Tardiness report from November 24; Verbal admonishment from December 2; Lateness Report from December 27. (Docket No. 103-4).

According to Ortíz, Ferrer was never admonished for untimeliness in relation to her periods for milk extraction.[20] Ortíz stated, that on one occasion, Ferrer was late to work following her milk extraction period because she had a car accident. While she arrived late to her shift, Ferrer was not reprimanded because she contacted Ortíz and informed her of the incident.[21]

On December 22, 2015, Raíces sent Bárbara Torres an email informing her that the temporary employment contracts of Ferrer and Joel Díaz were not going to be renewed after December 31, 2015, the date that Ferrer's temporary contract expired. The email stated that Ferrer's last working day would be December 31, 2015.

On December 27, 2015, according to Carrión, Ferrer arrived fifty-four minutes late to her shift and later that same day abandoned her job post to use her personal cellphone.[22] As a result of these incidents, Carrión sent Erika Ujaque an email requesting the cancellation of Ferrer's contract because Ferrer had "shown continuous incidents of lack of discipline" that were affecting the restaurant's operation and demonstrate a failure to comply with Raíces' rules. Ferrer received an admonishment for this incident.

In the morning of December 28, 2015, Raíces forwarded Carrión's email to Bárbara Torres informing JFY of this latest incident with Ferrer.

Regarding the disciplinary process for employees like Ferrer, if Ferrer acted contrary to Raíces' policies, practices, or procedures (like lateness, absenteeism, insubordination, etc.), typically, Raíces contacted Bárbara Torres from JFY and sent her supporting documents and an explanation of the violations. Then, Bárbara Torres would contact Ferrer and issue the applicable disciplinary action based on the information and supporting documents provided by Raíces. According to Ortíz, one of Ferrer's former supervisors at Raíces, in order to admonish Ferrer, Raíces instructed that the issue first go through Erika Ujaque, Raíces' Director of Human Resources, who in turn, would communicate directly with JFY so that JFY could issue the appropriate disciplinary action.

---

[20] Docket No. 103-2 at 28.
[21] Docket No. 103-2 at 28.
[22] Docket No. 103-4 at 88.

Raíces evaluated Ferrer's performance. Ferrer was positively evaluated by Raíces on multiple occasions pertaining to specific workdays.[23] All the evaluations on record included positive feedback regarding Ferrer's performance. The record does not reflect annual or monthly evaluations of Ferrer's performance.

Raíces ultimately made the decision to terminate Ferrer's assignment at the restaurant. Raíces communicated its decision to JFY.

Bárbara Torres at JFY notified Ferrer of Raíces' decision. JFY told Ferrer that Raíces did not renew the contract because she displayed a pattern of tardiness. In JFY's "Contract Termination Report," dated December 31, 2015, the reason listed for not renewing Ferrer's contract with Raíces was her "pattern of lateness."[24] Ferrer's last day of work at Raíces was December 30, 2015.

After her temporary employment contract was not renewed, Ferrer did not request JFY to place her with any other client company of JFY.

Regarding her wages, Ferrer does not remember whether there is any time that she worked at Raíces for which she was not compensated. Ferrer does not remember whether she made any claim to JFY regarding unpaid wages or unpaid tips. Ferrer admitted during her deposition that she does not have any evidence regarding unpaid wages. Ferrer admitted the following statement by Raíces: "Plaintiff does *not* have any admissible evidence or documents to support her assertion of unpaid wages and tips, nor did she make any formal claim" regarding unpaid wages.[25] During Ferrer's deposition, when asked whether she brought to JFY any complaint regarding her use of vacation time, Ferrer responded that she did not remember.

Plaintiff began seeing Dr. Rafael García Barcena, a psychiatrist, on June 16, 2016. Plaintiff admittedly sought professional help because she had issues with her

---

[23] Runner Performance Evaluation of April 11, 2014; Runner Performance Evaluation of April 22, 2014; Runner Performance Evaluation of May 20, 2014; Runner Performance Evaluation of June 11, 2014; Runner Performance Evaluation of June 20, 2014; Runner Performance Evaluation of July 11, 2014; Runner Performance Evaluation of August 3, 2014; Runner Performance Evaluation of August 13, 2014; Runner Performance Evaluation of September 8, 2014; Expo Performance Evaluation of October 14, 2014; Runner Performance Evaluation of November 15, 2014; Runner Performance Evaluation of December 9, 2014; Expo Performance Evaluation of January 17, 2015; Runner Performance Evaluation of November 18, 2015; Runner Performance Evaluation of December 12, 2015. (Docket No. 114-2).

[24] Docket No. 103-4 at 92.

[25] Docket No. 103 at 45 and Docket No. 115 at 53.

common law partner and father of her child, Elvin González. Plaintiff recognized that she sought counseling because of her relationship problems with González.

Dr. García diagnosed Ferrer with a mood disorder. Dr. García could not affirm whether Ferrer's termination had any influence on her emotional state.[26]

## IV.    Discussion

Plaintiff alleges that Defendants unlawfully terminated her assignment because of her pregnancy. Plaintiff claims that JFY and Raíces were her joint employers and, therefore, JFY and Raíces share liability for their decision to terminate her assignment at Raíces.

Raíces moves for summary judgment claiming that Plaintiff cannot establish a cause of action for discriminatory termination against it because JFY is her sole employer. JFY also moves for summary judgment on the same grounds: that it is not Ferrer's employer under Title VII, rather, Raíces is. Defendants thus play a game of "not it," claiming that neither of them is Ferrer's employer in order to avoid liability. Because Ferrer's federal claims are brought pursuant to Title VII, the Court must initially determine who Ferrer's employer was for purposes of Title VII.

### A.    Joint Employer Analysis

Title VII makes it unlawful "for any employer . . . to discharge any individual . . . because of such individual's" pregnancy. 42 U.S.C. § 2000e–2(a)(1). To establish liability under Title VII, a plaintiff must present sufficient evidence to show that the discriminatory conduct at issue can be attributable to her employer because "[t]itle VII liability attaches only in the event of a covered employment relationship." *Camacho v. P.R. Ports. Auth.*, 369 F.3d 570, 573 (1st Cir. 2004); *Medina v. Adecco*, 561 F.Supp.2d 162, 176 (D.P.R.2008). Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such person. . . ." *Id.* § 2000e(b).

"A joint employer relationship exists where two or more employers exert significant control over the same employees and share or co-determine those matters

---

[26] Raíces argues that there is no causal nexus between Ferrer's claims for emotional damages and the termination of her employment. In turn, Ferrer argues that the question of if, and to what extent, Defendants' illegal conduct, if any, affected Ferrer, is one to be answered by a jury. Because the Court cannot make credibility determinations at this stage, this will be a question for another day.

governing essential terms and conditions of employment." *Rivera–Vega v. ConAgra, Inc.,* 70 F.3d 153, 163 (1st Cir. 1995) (*quoting Holyoke Visiting Nurses Ass'n v. NLRB,* 11 F.3d 302, 306 (1st Cir. 1993)). "In order to qualify as an employer (or joint employer) for Title VII purposes, an entity must exercise *significant control* over the *terms and conditions* of an individual's employment." *Medina,* 561 F.Supp.2d at 177. The "joint employer" doctrine seeks to hold an entity liable to an employee of another entity if the evidence shows that it *sufficiently* had power over the employee in question. Thus, "[t]he joint employer inquiry is a matter of determining which of two, or whether both, respondents control, in the capacity of employer, the labor relations of a given group of workers." *Rivas v. Fed. de Asoc. Pecuarias de P.R.,* 929 F.2d 814, 820 (1st Cir. 1991) (citation and internal quotation marks omitted).

The First Circuit looks to common law agency principles to determine whether Title VII "employer" status exists. *See Camacho,* 369 F.3d at 574*; Alberty–Vélez v. Corporación de P.R. Para La Difusión Pública,* 361 F.3d 1, 6 (1st Cir. 2004) (adopting common law agency test to determine existence of employment relationship for Title VII purposes); *Medina*, 561 F. Supp. 2d 162, 176 (D.P.R. 2008).

To ascertain if indeed a joint employer relationship exists, the Court must examine "factors which include: supervision of the employees' day-to-day activities; authority to hire, fire, or discipline employees; authority to promulgate work rules, conditions of employment, and work assignment; participation in the collective bargaining process; ultimate power over changes in employer compensation, benefits and overtime; and authority over the number of employees." *Rivera–Vega,* 70 F.3d at 163; *Rivas,* 929 F.2d at 820. *See also Holyoke,* 11 F.3d at 306 ("right to approve employees, control number of employees, remove an employee, inspect and approve work, and pass on changes in pay and overtime allowed"); *Torres–Negron v. Merck & Company, Inc.,* 488 F.3d 34, 42 (1st Cir. 2007) (listing applicable factors to determine when "two or more entities are a single employer under the integrated-enterprise test"). *See Acosta v. Harbor Holdings & Operations, Inc.,* 674 F. Supp. 2d 351, 370–71 (D.P.R. 2009).

> Among the other factors relevant to this inquiry are the
> skill required; the source of the instrumentalities and tools;
> the location of the work; the duration of the relationship
> between the parties; whether the hiring party has the right
> to assign additional projects to the hired party; the extent
> of the hired party's discretion over when and how long to
> work; the method of payment; the hired party's role in
> hiring and paying assistants; whether the work is part of
> the regular business of the hiring party; whether the hiring
> party is in business; the provision of employee benefits; and
> the tax treatment of the hired party.

*Camacho,* 369 F.3d at 574 (quoting *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 323–24 (1992)). No one factor is outcome determinative. Rather, all the facts of an employment relationship must be weighed to determine whether that relationship fits within the confines of the employer-employee arrangement. *Medina*, 561 F. Supp. 2d 162, 177; *Darden,* 503 U.S. at 324.

Against this legal backdrop, the Court must determine whether Raíces and/or JFY possessed *sufficient* indicia of control over Ferrer so as to constitute her employer(s) under Title VII. The extent of Raíces' and/or JFY's control over Ferrer determines the outcome of the joint-employer inquiry.

There is no dispute that Ferrer worked at Raíces' restaurants pursuant to an employment contract with JFY. Ferrer claims that Raíces and JFY are joint employers because Raíces took actions that correspond to an employer and JFY is contractually bound with Raíces as Ferrer's employer. Both defendants, however, dispute their employer status. On one hand, JFY argues that the uncontested record reveals that it lacked sufficient control over Ferrer to constitute her employer for Title VII purposes. On the other hand, Raíces argues that, contractually, JFY is Ferrer's sole employer and that JFY was the one authorized to take all employment decisions of its personnel, including Ferrer.

On her part, Ferrer claims that because both defendants dispute their employer status, that alone raises a factual dispute preventing the Court from delving into the joint employer inquiry. Contrary to Ferrer's assertion, Defendants' disputed status as Ferrer's employer is not dispositive of the issue because the Court must apply the

undisputed facts to the abovementioned governing law to determine who Ferrer's employer is.

The Court begins with Ferrer's arguments against JFY. Ferrer's entire claim that JFY is her employer rests on the contractual relationship that existed between JFY and Raíces. To avoid liability, Raíces also champions this proposition, arguing that the contract between JFY and Raíces clearly specifies that JFY is the "sole employer" of the temporary employees assigned to work at Raíces, like Ferrer. As such, JFY *must* be the employer.

It is noteworthy that in response to JFY's motion for summary judgment, Ferrer did not offer *any* evidence to substantiate that, *factually* speaking, JFY exerted sufficient control over her employment, which is the required standard. It was only in Ferrer's sur-reply that *for the first time* she referred to evidence on the record for her proposition that JFY is her joint-employer. Ferrer supports its position with only *one* piece of evidence, JFY's employment manual, which states that: "YOUR EMPLOYER is Jobs For You. Remember, your employer is Jobs For You, not the company were you have been assigned to work. We are responsible to comply with all employer's obligations mandated by law." (Docket No. 108-1 at 23). Ferrer claims that JFY's statement in the employment manual is clearly an admission that JFY is *in fact* Ferrer's employer and that alone makes its Ferrer's joint employer. The Court disagrees.

In the Court's view, there are two problems with Ferrer's "too literal" of an argument. First, it ignores the legal Spanish maxim: "*el nombre no hace la cosa*," which the Court considers most analogously to mean "don't judge a book by its cover."[27] Second, Ferrer's argument ignores the legal standard for the joint-employer analysis, which requires the Court to determine whether the *facts* presented warrant a finding that Ferrer's employment relationship fits within the confines of the employer-employee relationship. And, while the content of JFY's employment handbook is uncontested, that alone is not sufficient to find that JFY was Ferrer's employer within the meaning of Title VII.

---

[27] This is not a literal translation.

Therefore, the Court, as it must, turns to the undisputed facts to determine whether Raíces and/or JFY exercised *sufficient* control over Ferrer's employment to constitute an "employer" under Title VII. For the reasons espoused below, under the factual scenario of this case, the Court agrees with JFY that it cannot be considered Ferrer's employer under Title VII. Rather, Raíces exercised the necessary degree of control over Ferrer's employment to constitute her employer for purposes of Title VII.

The uncontested facts reveal that: Raíces and JFY executed an agreement through which JFY would supply Raíces with temporary employees to work at Raíces' restaurants based on Raíces' business needs; Raíces requested JFY to place Ferrer at Raíces after Ferrer called the restaurant to inquire as to working there; Ferrer signed several agreements with JFY, by which she was placed to work as a temporary employee at Raíces; Ferrer signed a temporary contract for every month that she worked at Raíces.

Most significant to this analysis, the uncontested facts also show that: Ferrer reported to work at Raíces' locations, first in Old San Juan and later in Hato Rey; Raíces assigned the locations where Ferrer worked; Raíces established Ferrer's daily working conditions; Raíces assigned Ferrer's positions (she was first assigned the position of "runner" and then "expo"); Raíces established Ferrer's work schedule and shifts; Ferrer had to comply with the work schedule assigned by Raíces; to perform her duties, Ferrer used Raíces' equipment; Ferrer had to comply with Raíces' dress code and Raíces provided her with a uniform; Raíces' employees supervised and evaluated Ferrer's daily performance; Raíces' personnel completed Ferrer's evaluations; Raíces determined whether Ferrer would work overtime; Ferrer had to log-in her work hours using a digital assistance clock located at the restaurants; regarding the disciplinary process for employees like Ferrer, Raíces typically requested JFY to issue the appropriate disciplinary action based on the information and supporting documents provided by Raíces; on occasions, Raíces directly disciplined Ferrer;  Raíces determined when Ferrer's assignment was terminated and/or whether her contract would be renewed; Raíces requested that JFY terminate Ferrer's assignment at Raíces, thus Ferrer was terminated.

Based on these facts, which the Court construes most favorably to Plaintiff, the inevitable conclusion is that Raíces, *not* JFY, exercised sufficient day-to-day control over the terms and conditions of Ferrer's work to constitute her "employer" under Title VII. Even under a broad definition of "employer," JFY cannot be considered a joint employer under these circumstances because it lacked control over the essential terms and conditions of Ferrer's everyday employment. In the Court's view, no reasonable fact finder considering the above facts, could reasonably infer that JFY exercised the necessary degree of control over Ferrer's daily work activities to constitute her joint employer under Title VII. *See Rivas v. Federacion de Asociacions Pecuarias de Puerto Rico*, 929 F.2d 814, 821 (1st Cir. 1991) (holding that the evidentiary materials did not lead to the conclusion that defendant exercised sufficient control over the essential terms of plaintiffs' employment to constitute a joint employer under federal law); *Medina v. Adecco*, 561 F. Supp. 2d 162, 177 (D.P.R. 2008) (granting summary judgment where plaintiff failed to produce evidence that temporary placement agency exercised control over plaintiff's daily employment, and therefore was not a joint employer). *See also Watson v. Adecco Employment Servs., Inc.,* 252 F.Supp.2d 1347, 1356 (M.D.Fla.2003) (concluding that temporary placement agency could not be a joint employer of temporary employee for purposes of Title VII where agency exercised no control over the employee's responsibilities or duties once on assignment, even though the agency paid the employee); *Astrowsky v. First Portland Mortgage Corp.,* 887 F.Supp. 332, 333 (D.Me.1995) (holding staffing firm did not exercise sufficient control over plaintiff's employment to constitute employer under federal discrimination laws). *But cf. Riesgo v. Heidelberg Harris, Inc.,* 36 F.Supp.2d 53, 58 (D.N.H.1997) (assuming arguendo client company and temporary agency constitute joint employers); *Shah v. Littelfuse Inc.*, 2013 WL 1828926, at *5 ("[A] temporary employment agency cannot be sued pursuant to a joint-employer theory" where "the agency serves as an intermediary between the plaintiff and the agency's client but exercises virtually no control or supervision over the plaintiff's day-to-day").

The following facts do not change the above result: that Ferrer signed the temporary employment contracts at JFY's offices; that JFY typically issued Ferrer's paychecks (although it appears that Raíces issued some payments directly to Ferrer);

that JFY provided employees like Ferrer a notice regarding their online payroll payments. *See e.g. Williams v. Caruso,* 966 F.Supp. 287, 296 (D.Del.1997) (holding issuance of paychecks insufficient to render temporary agency employer under agency principles). Moreover, the fact that JFY's employment handbook states that it *is* Ferrer's employer is not outcome determinative.

Here, the evidentiary material shows that it was Raíces who, as a matter of fact, controlled in the capacity of employer the employment relationship of Ferrer. Indeed, the undisputed record reveals that Raíces, and not JFY, exercised sufficient control and/or power over Ferrer's day-to-day activities in the workplace. After weighing the undisputed facts of this case and applying them to the pertinent factors to determine whether a joint employer relationship exists, Ferrer's employment relationship with Raíces falls squarely in the employer-employee relationship. In contrast, the evidence involving Ferrer's relationship with JFY falls short of showing that it was Ferrer's employer or joint-employer under Title VII.[28]

To conclude, Raíces is Ferrer's employer for purposes of Title VII. JFY cannot be considered Ferrer's joint employer under the statute. Because Title VII liability attaches only "in the event of a covered employment relationship" *Camacho v. P.R. Ports. Auth.*, 369 F.3d 570, 573 (1st Cir. 2004), there is no basis upon which to hold JFY liable under Title VII for Ferrer's alleged discriminatory and retaliatory termination. Accordingly, summary judgment is warranted in favor of JFY with respect to Ferrer's Title VII claims.

### B.    Analysis of claims against Raíces

Having concluded that Raíces is Ferrer's employer under Title VII, the Court now turns to Raíces' additional arguments in favor of summary judgment. Ferrer claims that Raíces unlawfully terminated her assignment because of her pregnancy. Raíces moves for summary judgment on all of Ferrer's claims alleging that: (1) Ferrer cannot establish a *prima facie* case of discriminatory termination under Title VII; (2) Ferrer fails to

---

[28] On a last note on this matter, it is significant that neither Raíces nor Ferrer disputed the uncontested facts revealing that Raíces, not JFY, exercised the requisite degree of control over Ferrer's daily employment. As a matter of fact, Raíces did not oppose JFY's motion for summary judgment nor did it respond to JFY's proposed statement of uncontested material facts, most of which reveal that Raíces is Ferrer's employer for Title VII purposes.

demonstrate that Raíces' nondiscriminatory reason for terminating her employment is pretext for pregnancy discrimination; (3) Ferrer cannot establish a *prima facie* case of retaliation under Title VII. Raíces also seeks summary judgment on Ferrer's supplemental law claims. The Court addresses each argument *seriatim*.

### 1.      Discriminatory Termination under Title VII

Title VII makes it an unlawful employment practice for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). The Pregnancy Discrimination Act of 1978 ("PDA") extended Title VII's protection against discrimination to specifically include discrimination "on the basis of pregnancy, childbirth or related medical conditions." 42 U.S.C. § 2000e(k). *Martinez-Burgos v. Guayama Corp.*, 656 F.3d 7, 12 (1st Cir. 2011). EEOC guidance issued in June 2015 states that "lactation is a pregnancy related medical condition" and thus "less favorable treatment of a lactating employee may raise an inference of unlawful discrimination." EEOC Enforcement Guidance for Pregnancy Discrimination and Related Issues, June 25, 2015 § (I)(A)(4)(b)[29]; *Mayer v. Prof'l Ambulance, LLC*, 211 F. Supp. 3d 408, 417 (D.R.I. 2016). Because the trend has been to follow the Fifth Circuit's reasoning in *EEOC v. Houston Funding II, Ltd.*, 717 F.3d 425, 428 (5th Cir.2013), holding that lactation is a "condition related to pregnancy" under the PDA, absent any argument to the contrary by the parties, this Court follows the rationale adopted by the Fifth Circuit, holding that a woman's status as a lactating mother is afforded protected status under Title VII.[30]

---

[29] Available at http://www.eeoc.gov/laws/guidance/pregnancy_guidance.cfm.

[30] *See e.g. Mayer v. Prof'l Ambulance, LLC*, 211 F. Supp. 3d 408, 417 (D.R.I. 2016) (absent contrary guidance from the First Circuit, following the *Houston Funding* decision and EEOC guidance, and finding that lactation is a medical condition related to pregnancy, and therefore covered under Title VII); *Allen–Brown v. D.C.*, No. CV 13–1341 (RDM), 174 F.Supp.3d 463, 478, 2016 WL 1273176, at *11 (D.D.C. Mar. 31, 2016) (holding that "[a]lthough the D.C. Circuit has yet to address this question, the Court finds the Fifth Circuit's analysis in [*Houston Funding*] persuasive."); *Hicks*, 2015 WL 6123209, at *19 ("The court agrees that lactating is a medical condition related to pregnancy and childbirth, and that a lactating employee may not be treated differently in the workplace from other employees with similar abilities to work. Thus, a female employee may not be discharged or otherwise disciplined simply because she is lactating."); *EEOC v. Vamco Sheet Metals*, Inc., No. 13 CIV. 6088 JPO, 2014 WL 2619812, at *6 (S.D.N.Y. June 5, 2014) (finding that allegations that the plaintiff "was harassed for taking lactation breaks and eventually terminated . . . may be able to state a claim for disparate treatment under Title VII"); *Martin v. Canon Bus. Sols., Inc.*, No. 11–CV–02565, 2013 WL 4838913 at *8 (D.Colo.

"It is settled under Title VII that an employer may not discharge an employee based on the categorical fact of her pregnancy." *Smith v. F.W. Morse & Co.,* 76 F.3d 413, 424 (1st Cir.1996). An employer may, however, discharge a pregnant employee "if it does so for legitimate reasons unrelated to her pregnancy." *Id.; Martinez-Burgos v. Guayama Corp.,* 656 F.3d 7, 12 (1st Cir. 2011).

Where, as here, there is no direct evidence of discrimination, the Court applies the *McDonnell Douglas* burden shifting framework to determine whether Ferrer can prove intentional discrimination under Title VII. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). The initial burden falls upon the plaintiff to establish a *prima facie* case of pregnancy discrimination. *Smith,* 76 F.3d at 421. Ferrer must therefore show that: (1) she was pregnant or indicated an intention to become pregnant; (2) she performed her job satisfactorily; (3) the employer took an adverse employment action against her; and (4) the employer continued to have her duties performed by a comparably qualified person. *See F.W. Morse,* 76 F.3d at 421; *Medina,* 561 F. Supp. 2d at 168–69.

The First Circuit has described meeting the initial *prima facie* case as "not especially burdensome," "not onerous," "easily made," and a "small showing." *Greenberg v. Union Camp Corp.,* 48 F.3d 22, 26 (1st Cir.1995); *Kosereis v. Rhode Island,* 331 F.3d 207, 213 (1st Cir.2003); *Smith v. Stratus Computer, Inc.,* 40 F.3d 11, 15 n. 4 (1st Cir.1994) (describing plaintiff's burden as "relatively light").

Plaintiff's satisfaction of her *prima fac*ie burden creates a rebuttable presumption that discrimination prompted the challenged adverse employment action. *Cumpiano v. Banco Santander P.R.,* 902 F.2d 148, 153 (1st Cir. 1990). Defendants may rebut this presumption by articulating a non-discriminatory reason for the adverse employment action, which eliminates the presumption and shifts the burden back to Plaintiff. *Smith,* 76 F.3d at 421.

Plaintiff must then point to *sufficient* evidence to demonstrate that the employer's proffered reason is a mere pretext and that the true reason is discriminatory. *Id.*

---

Sept. 10, 2013) ("[T]he Court agrees with a recent decision of the Fifth Circuit in which it held that 'discriminating against a woman who is lactating or expressing breast milk violates Title VII and the PDA.'" (quoting *Houston Funding,* 717 F.3d at 430)).

Ultimately, the Court must decide "whether, viewing the 'aggregate package of proof offered by the plaintiff' and taking all inferences in [her] favor, [she] has raised a genuine issue of fact as to whether the termination of [her] employment was motivated by discrimination." *Dominguez–Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 431 (1st Cir. 2000) (quoting *Mesnick v. Gen. Elec. Co.,* 950 F.2d 816, 825 (1st Cir. 1991)).

Against that legal backdrop, the Court turns to the specific facts of this case to determine whether Ferrer's termination of employment was motivated by pregnancy discrimination. For summary judgment purposes, Raíces argues that, assuming Ferrer could make a *prima facie* showing of pregnancy-based discrimination, Raíces had a legitimate nondiscriminatory reason for requesting to terminate her assignment.[31] The Court therefore assumes, without deciding, that Ferrer met the "easily made" showing of her *prima facie* case and moves on to the rebuttable presumption analysis: that discrimination sparked Ferrer's termination. *See Cumpiano*, 902 F.2d at 153.

---

[31] Regarding Ferrer's prima facie case, there is evidence showing that: (1) Ferrer was pregnant; (2) Ferrer performed her job satisfactorily because all evaluations on record are positive; and (3) the employer took an adverse employment action against her because she was terminated. *See F.W. Morse,* 76 F.3d at 421; *Medina,* 561 F. Supp. 2d at 168–69.

As to the third element, Plaintiff's chief argument in this case is that Defendants are liable because she was illegally terminated. The adverse employment action alleged, and of which there is sufficient evidence, is her employment termination. It is in fact uncontested. Plaintiff nevertheless skeletally mentions in her complaint another "incident" related to her employment, namely, an alleged promise of a promotion that was unfulfilled. Notwithstanding the mention of this "promise," Plaintiff fails to develop any sort of legal argument for the Court to consider this alleged unfulfilled "promise" as an adverse employment action. Perhaps Ferrer did not intend to claim this as such. But, if she did, she cannot prevail because there is nothing on the pleadings or the record suggesting that the incident involving a failure to promote is anything more than an allegation "supporting" Ferrer's discriminatory termination claim.

It goes without saying that judges are not mind-readers, so parties must spell out their issues clearly, highlighting the relevant facts and analyzing on-point authority. *See United States v. Bongiorno,* 106 F.3d 1027, 1034 (1st Cir.1997). *See also U.S. v. Zannino,* 895 F.2d 1, 17 (1st Cir.1990) (warning that it is not enough for litigants to mention arguments "in the most skeletal way, leaving the court to do counsel's work"); *Rodriguez v. Mun. of San Juan,* 659 F.3d 168, 175 (1st Cir. 2011) (courts deem waived claims not made or claims adverted to in a cursory fashion, unaccompanied by developed argument). Accordingly, the Court hereby deems waived any claim by Plaintiff alleging an adverse employment action *other than* her employment termination, if there was any in the first place. As such, Ferrer's termination is the only adverse employment action that will be considered for purposes of this suit.

Finally, regarding the fourth element of the *prima facie* case, the Court notes that there is no evidence on the record as to whether the employer continued to have Ferrer's duties performed by a comparably qualified individual. But, because Raíces assumes for summary judgment purposes that Ferrer made out her *prima facie* showing, the Court moves on with the burden-shifting analysis.

### A. *Raíces' Legitimate, Nondiscriminatory Reason for Terminating Ferrer*

Raíces put forward a legitimate, nondiscriminatory reason for terminating Ferrer's assignment. It claims that Ferrer's repeated pattern of lateness was the sole reason for requesting her assignment termination. Raíces further argues that Ferrer's repeated unpunctuality constituted inadequate performance, which affected its business operations, and that requiring its employees, like Ferrer, to arrive timely to their shifts is reasonable and legitimate.

Indeed, Raíces submits evidence of Ferrer's pattern of untimeliness. Raíces offers evidence through Ferrer's own deposition testimony and from official business documents, showing that she arrived late to work on at least sixteen (16) occasions in 2015, the year she was terminated. *See e.g.* (Docket Nos. 103-6 p. 3-6; 103-2 p. 73). Raíces also sets forth documentary evidence of at least eleven (11) disciplinary actions issued to Ferrer in 2015 because of her untimeliness. (Docket No. 103-4). In addition, Ferrer's termination documentation states that the reason for the non-renewal of her temporary employment was her "pattern of lateness." (Docket No. 103-4 at 92).

With such undisputed evidence, Raíces rebuts the presumption created by Ferrer's *prima facie* case and shifts the burden of persuasion back to Ferrer who must prove that Raíces' proffered justification is a pretext for discrimination.

### B. *Pretext*

In the final stage of the analysis, the burden shifts back Ferrer to point to sufficient evidence proving that Raíces' alleged justification is not the true reason for her termination but rather a mere pretext for pregnancy discrimination. Raíces argues that Ferrer fails to satisfy this burden. After considering all the parties' arguments, the Court finds that Ferrer presented sufficient evidence to withstand summary judgment on the pretext issue. *See Medina v. Adecco*, 561 F. Supp. 2d 162, 170 (D.P.R. 2008).

At the pretext stage, the Court considers the ultimate question in a discrimination case: did plaintiff present *sufficient* evidence that defendant's stated reason was a pretext for discrimination? *See Mulero–Rodriguez v. Ponte, Inc.,* 98 F.3d 670, 674 (1st Cir.1996). To avoid summary judgment, plaintiff must present sufficient evidence to create a genuine issue of fact with respect to two issues: whether the

legitimate reasons Raíces offered were not its true reasons and whether the real reason was discrimination. *See Calero–Cerezo,* 355 F.3d at 25–26; *Stratus Computer,* 40 F.3d at 16 (1st Cir.1994). In certain circumstances, discriminatory animus may be inferred from the simple showing of pretext. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 147–49 (2000).

To be sure, Title VII does not prevent an employer from terminating an employee for any reason (fair or unfair) so long as the decision to discharge the employee does not stem from unlawful discriminatory animus. *Figueroa Garcia v. Lilly Del Caribe, Inc.*, 490 F. Supp. 2d 193, 210 (D.P.R. 2007). The Court does not sit as a super personnel department, assessing the merits and rationality of the employer's legitimate, nondiscriminatory reasons. *Id.* In evaluating pretext, the court must focus on whether the employer believed its stated reasons to be credible and reasonable. The inquiry goes to the subjective belief of those making the termination decision; the relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs. *See Ronda Peréz v. Banco Bilbao Vizcaya Argentaria,* 404 F.3d 42, 45 (1st Cir. 2005); *Mulero– Rodriguez,* 98 F.3d at 674; *Adecco*, 561 F. Supp. 2d 162, 170 (D.P.R. 2008). A plaintiff may only withstand *brevis* disposition if she offers sufficient evidence that discrimination or retaliation motivated the employer's decision. *Id. See Mesnick*, 950 F.2d at 824–25; *Gray v. N. Eng. Tel. & Tel. Co.*, 792 F.2d 251, 255–56 (1st Cir. 1986)

Plaintiff may show pretext by highlighting "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons such that a fact finder could infer that the employer did not act for the asserted non-discriminatory reasons." *Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 56 (1st Cir. 2000).

The First Circuit has recognized that "there is no 'mechanical formula' for finding pretext." *Che v. MBTA,* 342 F.3d 31, 39 (1st Cir. 2003) (quoting *Feliciano de la Cruz v. El Conquistador Resort & Country Club,* 218 F.3d 1, 6 (1st Cir. 2000)). It has also recognized that the pretext inquiry depends entirely on the individual facts. *Id.* Consequently, the First Circuit warns that courts must be "'particularly cautious' in granting summary judgment on a discrimination claim when the case boils

down to whether the employer's stated reasons are pretextual." *Kosereis,* 331 F.3d at 216 (quoting *Hodgens v. Gen. Dynamics Corp.,* 144 F.3d 151, 167 (1st Cir. 1998)); *see also Billings v. Town of Grafton,* 515 F.3d 39, 56 (1st Cir. 2008) (denying summary judgment due to factual disputes regarding motivation behind adverse employment action); *Santiago–Ramos,* 217 F.3d at 54 ("[C]ourts should exercise particular caution before granting summary judgment for employers on such issues as pretext, motive, and intent").

Here, Raíces claims that Ferrer did not present sufficient evidence that its stated reason to terminate her temporary assignment was a pretext for discrimination. The Court disagrees. Ferrer presented sufficient evidence to create a genuine issue of fact with respect to whether the legitimate reasons Raíces offered were not its true reasons and whether the "real" reason was discrimination. *See Calero–Cerezo,* 355 F.3d at 25–26. Therefore, Ferrer withstands summary disposition on her claim for discriminatory termination because she offered sufficient evidence to raise a triable issue regarding whether discrimination motivated Raíces' decision.

For example, there is evidence from which a reasonable fact-finder could infer that Ferrer adequately performed her job and met Raíces' job expectations and, therefore, her termination was pretextual. First, Raíces repeatedly renewed Ferrer's monthly assignments since her first day of work on February 13, 2014. Her most recent renewal occurred on November 2015, a month before her termination. Second, Ferrer received at least fifteen positive performance evaluations, including one from November 18, 2015 (a month before her termination) and one from December 12, 2015 (the month she was terminated). (*See* Docket No. 114-2).[32] The latter was Ferrer's most recent positive evaluation, which was prepared just *days* before Raíces requested that JFY not renew her temporary employment contract. Ferrer thus argues that she satisfied Raíces' performance requirements. Third, the record does not reflect any negative performance evaluations, rather, *all* the evaluations on record included positive feedback regarding Ferrer's performance. Fourth, none of Ferrer's evaluations on record mention her untimeliness issues, even though all evaluations include a section describing whether

---

[32] The Court notes that all the evaluations on record correspond to specific work days; they are not monthly or yearly evaluations.

the "employee reported on time to his or her work area/shift meeting." (Docket No. 114-2).

Viewing this evidence in the light most favorable to Plaintiff, the Court finds that a reasonable jury relying upon this evidence could question the veracity of Raíces' performance-related justification for terminating Ferrer. Ferrer pointed to "weaknesses, implausibilities, and inconsistencies" in Raíces' actions upon which a reasonable fact finder could infer pretext. Indeed, Ferrer's evidence raises triable issues regarding the "adequacy" of Ferrer's performance and Raíces' purported reasons for terminating her assignment. Ferrer's evidence also raises a genuine issue of fact with respect to whether Raíces' legitimate, nondiscriminatory reasons for her termination are pretextual.

Furthermore, Ferrer's proof of pretext combined with the fact that she returned from maternity leave on November 2015, she complained that Raíces did not provide her with an adequate space to express breastmilk, and was subsequently terminated on December 2015, constitutes additional circumstantial evidence of pregnancy discrimination. The Court also factors into the analysis Ferrer's contention that Raíces attempts to make much of Ferrer's sixteen (16) tardiness incidents, but that none of those incidents resulted in a negative evaluation, which, according to Ferrer, demonstrates that they were either unremarkable or they did not affect the quality of her work. Ferrer also points to another "inconsistency" from which pretext may be inferred, the fact that it was not until *after* she returned from maternity leave and complained about an inadequate space for breastfeeding that, allegedly, her tardiness "became an issue" for Raíces, sufficient to terminate her.

In sum, viewing Ferrer's aggregate package of proof and taking all inferences in her favor, Ferrer raises triable issues with respect to whether pregnancy-based animus motivated Raíces' termination decision. A jury must therefore be allowed to determine whether discriminatory animus motivated Raíces' decision, if at all. Accordingly, the Court **DENIES** Raíces' motion for summary judgment on Ferrer's Title VII discriminatory termination claim.

Notwithstanding the Court's ruling, it must be noted, however, that Raíces offers evidence tending to show that discrimination did *not* motivate its decision to terminate Ferrer's assignment. For example, Raíces repeatedly renewed Ferrer's monthly contract

and gave her positive evaluations *after* she announced her pregnancy and *after* she returned from maternity leave, which may suggest a lack of pregnancy-based animus. Raíces also provided Ferrer several pregnancy-related accommodations. There is also evidence that in December 2015, Raíces requested the termination of *two* employees: Ferrer and a *man* named Joel Díaz.[33] And, of course, there is evidence of Ferrer's pattern of untimeliness, which is the purported reason for her termination. During trial, the termination of Ferrer's assignment may ultimately prove to have been innocent and legitimate. Nonetheless, Ferrer raises genuine issues of material fact sufficient to withstand summary judgment on this claim.

## 2.    <u>Retaliatory Termination under Title VII</u>

Ferrer claims that her temporary employment was terminated for discriminatory reasons and for complaining to Raíces and JFY that she was not provided an agreeable space to express breastmilk.

Title VII makes it unlawful for an employer to retaliate against an employee because the employee has taken an action to enforce her rights under Title VII. 42 U.S.C. § 2000e. Pursuant to Title VII:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . for an employment agency . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e–3(a). When, like here, there is no direct evidence of retaliation, retaliation claims are subject to the *McDonnell Douglas* burden-shifting framework.

First, the plaintiff must establish a *prima facie* case of retaliation by showing that: (1) she engaged in conduct that Title VII protects; (2) she suffered an adverse employment action; and (3) the adverse action is causally connected to the protected activity. *Collazo v. Bristol–Myers Squibb Mfg., Inc.,* 617 F.3d 39, 46 (1st Cir.2010). *See Noviello*, 398 F.3d at 88. This is "a small showing that is not onerous and is easily made." *Che v. Mass. Bay Transp. Auth.,* 342 F.3d 31, 38 (1st Cir.2003) (citation omitted).

---

[33] The circumstances of Díaz' termination are unknown to the Court.

Once the plaintiff makes out a *prima facie* case, the defendant in turn must "articulate a legitimate, non-retaliatory reason" for the adverse action. *Collazo,* 617 F.3d at 46. At the third stage, the burden shifts back to the plaintiff to establish that the employer's proffered reason is mere pretext for retaliatory animus. *Id. See Moreta v. First Transit of PR, Inc.,* 39 F. Supp. 3d 169, 179 (D.P.R. 2014).

Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in §2000e–2(m). *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer. *Id.*

For a retaliation claim under Title VII "to survive a motion for summary judgment, the plaintiff must point to evidence in the record that would permit a rational factfinder to conclude that the employment action was retaliatory." *King v. Town of Hanover,* 116 F.3d 965, 968 (1st Cir. 1997). Title VII retaliation claims may be established through direct or circumstantial evidence. *DeCaire v. Mukasey,* 530 F.3d 1, 20 (1st Cir.2008).

In this case, Raíces does not claim that Ferrer fails to satisfy the first element of the *prima facie* case of retaliation, namely, that Ferrer engaged in conduct that Title VII protects. But, neither Plaintiff nor Raíces specifies what was Ferrer's protected activity under Title VII.[34] As to the second element, it is undisputed that Ferrer suffered

---

[34] There is no evidence that Ferrer made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under 42 U.S.C. § 2000e–3(a). There is however evidence that Ferrer complained to Raíces and JFY regarding her breastfeeding rights, namely, that she was not offered an adequate space to express breastmilk. As such, the Court assumes, without deciding on the validity of such a complaint under this statute, that Ferrer relies on the opposition clause of Title VII's anti retaliation provision, which makes it unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e–3(a).

The Supreme Court addressed the scope of the opposition clause in *Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 555 U.S. 271, 129 S.Ct. 846 (2009); *Collazo v. Bristol-Myers Squibb Mfg., Inc.*, 617 F.3d 39, 46 (1st Cir. 2010). The Court held that the term "oppose," left undefined by the statute, carries its ordinary meaning, which includes "to resist or antagonize . . . ; to contend against; to confront; resist; withstand," or "to be hostile or adverse to, as in opinion." *Crawford,* at 850 (quoting *Webster's New International Dictionary* 1710 (2d ed. 1958) and *Random House Dictionary of English Language* 1359 (2d ed. 1987)). Applying this standard, the Court held that a plaintiff who did not *initiate* a complaint about sexual harassment nevertheless engaged in protected conduct under the opposition clause. *Id.* at 849.

an adverse employment action, that is, that her temporary employment was terminated. So, the second element is met. Assuming Ferrer engaged in protected activity, the issue boils down to the third element. Raíces argues that Ferrer cannot satisfy the last prong of the *prima facie* case because she did not suffer an adverse employment action "because of" her pregnancy. And, although it is not expressly argued in its motion for summary judgment, the Court understands that Raíces' argument turns on Ferrer's alleged failure to demonstrate that the adverse employment action is casually connected to the "protected activity."

In the present case, it is undisputed that Raíces did not have a designated area in the Hato Rey restaurant for milk extraction or breastfeeding. There is evidence on the record, from Ferrer's deposition testimony, that when she returned from maternity leave in early November 2015, Ferrer complained that she was not provided an adequate space for milk extraction. There is also deposition testimony from Ferrer that she told Raíces' representatives, including her supervisors in Hato Rey, and the owners of the restaurant, that she needed an adequate space to express breastmilk. One of Ferrer's supervisors, Dianira Carrión confirmed that Ferrer inquired as to an adequate space for milk extraction and that she requested such a space.

There is however conflicting testimony regarding the space which Raíces allegedly offered to Ferrer for milk extraction. Raíces claims that upon Ferrer's return from maternity leave, it offered her a private, quiet, and convenient place to extract her breastmilk, namely, the administrative office. To support its contention, Raíces points to Nydia Ayala's Statement Under Penalty of Perjury. (Docket No. 103-6). Ayala is Raíces' Vice President and owner. Ayala states that she told Ferrer that because Raíces did not have a designated breastfeeding room at the restaurant, Ferrer could use the administrative office, which was private. According to Ayala, Ferrer told her that she preferred to express breastmilk at her baby's day care center or her home. Ayala also states that she supported Ferrer's decision. And, there is evidence that Ferrer drove to her home to Carolina to express breastmilk.

Moreover, according to one of Ferrer's supervisors, milk extraction was usually done at the administrative office because it is a private space.[35] As such, Raíces avers that despite their offer to Ferrer to use the administrative office, Ferrer told it, through Ayala, that she preferred to express breastmilk at her home. Raíces argues that it respected and abided by Ferrer's decision. In stark contrast, however, according to Carrión, the Operations Manager at Raíces, she spoke with Ayala about Ferrer's desire to express breastmilk in an adequate area and Ayala allegedly said that Ferrer could *not* express breastmilk in the office.

In addition, there is conflicting testimony with respect to Ferrer's ultimate "decision" to drive to her home to express breastmilk and return to work thereafter, rather than expressing at a designated space in the restaurant. According to Ayala, Ferrer "decided" to perform milk extraction at her home and Raíces "respected" that decision. But, pursuant to Ferrer and Carrión's testimonies there is an issue of fact as to whether Plaintiff "decided" to express breastmilk at her home or whether she was "forced" to do so because she was not provided an adequate space at Raíces.

Furthermore, as noted above, Ferrer returned from maternity leave in early November 2015 and immediately complained about not having an adequate space for milk extraction. One month later, Raíces terminated her temporary assignment. While this is certainly not a smoking gun, very close temporal proximity between protected activity and a materially adverse action may give rise to an inference of causation. *Sánchez–Rodríguez v. AT&T Mobility Puerto Rico, Inc.,* 673 F.3d 1, 15 (1st Cir.2012).

Based on the foregoing, triable issues of fact exist as to whether Ferrer's termination is causally connected, if at all, to the protected activity in this case. Although there is no direct evidence that Ferrer's termination occurred in retaliation for her complaints regarding the exercise of her breastfeeding rights, there is sufficient circumstantial evidence that could permit a rational factfinder to conclude that Ferrer's termination was retaliatory because of her pregnancy. The Court also borrows from its Title VII discriminatory termination analysis, where the Court found that Ferrer

---

[35] Docket No. 103-2 at 54.

pointed to sufficient evidence that would permit a rational factfinder to conclude that the employment action was discriminatory.

In sum, triable issues of fact preclude summary judgment on Ferrer's Title VII retaliation claim because she presented sufficient evidence questioning whether her termination stemmed from discriminatory animus and therefore, was casually related to her complaints regarding her breastfeeding rights. In due course, Ferrer's termination may prove to have been lawful, but Ferrer raised genuine issues of material fact sufficient to withstand summary judgment on her Title VII retaliation claims against Raíces.

### 3.      <u>Supplemental Claims</u>

Ferrer also asserts supplemental Puerto Rico law claims arising out of the same nucleus of facts as her Title VII claims. Specifically, Ferrer alleges that Raíces violated the following Puerto Rico laws: Law 80 of May 30, 1976, as amended, P.R. Laws Ann. tit. 29, §§ 185a–185m; Law 100 of June 30, 1959, as amended, P.R. Laws Ann. tit. 29, §§ 146–151; Law 69 of July 6, 1985, as amended, P.R. Laws Ann. tit. 29, §§ 1321–1341; Law 3 of March 13, 1942, as amended, P.R. Laws Ann. tit. 29, §§ 467–474; Law 115, P.R. Laws. Ann. tit. 29, §§ 194 *et seq.;* and Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141. Raíces seeks summary judgment on each of Ferrer's Puerto Rico law claims. The Court discusses each claim *seriatim.*

#### a.      <u>Puerto Rico Law 80</u>

Law 80, Puerto Rico's wrongful termination statute, provides relief to employees terminated "without good cause." P.R. Laws Ann. tit. 29, § 185a. Section 185b of Law 80 gives examples of "good cause" for termination and further provides that a termination which is "made by the mere whim of the employer or without cause relative to the proper and normal operation of the establishment" is not a termination for good cause. *Velazquez Fernandez v. NCE Foods, Inc.*, 405 F. Supp. 2d 179, 192 (D.P.R. 2005), aff'd, 476 F.3d 6 (1st Cir. 2007); P.R. Laws Ann. tit. 29 § 185b (2003). Courts have found good cause for termination exists where an employee violated an employer's internal procedures, *Vargas v. Royal Bank of Canada,* 604 F.Supp. 1036 (1985), and where an employee failed to follow rules and supervisory instructions, *Menzel v. Western Auto Supply Co.,* 662 F.Supp. 731 (1987). "Law 80 does not invariably require repeated

violations, particularly where an initial offense is so serious, or so reflects upon the employee's character, that the employer reasonably should not be expected to await for further occurrences." *See Gonzalez v. El Dia, Inc.*, 304 F.3d 63 (1st Cir. 2002) *citing Delgado Zayas v. Hosp. Interamericano de Medicina Avanzada,* 137 D.P.R. 643, 650 (1994).

Under Law 80, an employee bears the initial burden of alleging unjustified dismissal and proving actual dismissal. If the employee satisfies this burden, then the employer must prove, by a preponderance of the evidence, that it discharged the employee for "good cause". *Alvarez–Fonseca v. Pepsi Cola of P.R.,* 152 F.3d 17, 28 (1st Cir.1998).

Raíces challenges Ferrer's Law 80 claim on two grounds. First, Raíces argues that only JFY, and not Raíces, is potentially liable to Ferrer under Law 80 because Raíces is not Ferrer's employer. Second, Raíces claims that it terminated Ferrer's assignment for "good cause." For the reasons espoused below, neither of Raíces' arguments provide a basis upon which to grant summary judgment in favor of Raíces.

As to the first argument, Law 26 of July 22, 1992, P.R. Laws Ann. tit. 29, §§ 575–575e, regulates temporary employment companies, like JFY. Under Law 26, *whoever* violates the wrongful dismissal statute, be it the temporary employment company or the client company, incurs in liability. *Id.* § 575b. Accordingly, if Raíces, the client company, terminated Ferrer's assignment without just cause, it may be liable to her under Law 80. Raíces' arguments that it cannot incur in Law 80 liability because it is not Ferrer's employer or that it cannot be liable to a temporary employee fail as a matter of law. *See Medina v. Adecco*, 561 F. Supp. 2d 162, 174 (D.P.R. 2008).

Raíces' second argument, that it terminated Ferrer's assignment for "just cause" cannot prevail because, as the Court found above, triable issues of fact remain as to the "real" reason behind Raíces' decision to terminate Ferrer's temporary assignment. These triable issues preclude the entry of summary judgment in Raíces' favor on Ferrer's unlawful discharge claim pursuant to Law 80. *See id.*

### b.    Puerto Rico Laws 100, 69, and 3

Law 100 is Puerto Rico's general employment discrimination statute. P.R. Laws Ann. tit. 29, § 146. It bans employment discrimination on the basis of sex. *See* P.R. Laws

Ann. tit. 29, § 146; *Cardona–Jiménez v. Bancomerico de P.R.*, 174 F.3d 36, 42 (1st Cir. 1999). The Puerto Rico Supreme Court has recognized that Law 100 is more plaintiff-friendly than its federal counterpart, Title VII. *See Dominguez v. Eli Lilly & Co.,* 958 F.Supp. 721, 744 (D.P.R.1997) (citing *Ibanez v. Molinos de P.R., Inc.,* 14 P.R. Offic. Trans. 58, 114 D.P.R. 42 (1983)). While Title VII and Law 100 claims involve similar issues, the statutes differ on their respective burden of proof allocations; Law 100 places a tougher burden on defendant. *See Hoyos v. Telecorp. Commc'ns, Inc.,* 405 F.Supp.2d 199, 206–07 (D.P.R.2005) (discussing Law 100 burden shifting framework), *aff'd,* 488 F.3d 1 (1st Cir. 2007); *Mejias Miranda v. BBII Acquisition Corp.,* 120 F.Supp.2d 157, 174 (D.P.R.2000) (noting burden of production, not merely burden of persuasion, shifts to defendant under Law 100).

Under Law 100, plaintiff bears the initial burden of establishing: (1) that she suffered an adverse employment action; (2) that the adverse employment action was not justified; and (3) some basic fact substantiating the type of discrimination alleged. *Hoyos,* 405 F.Supp.2d at 206. Once plaintiff satisfies her initial burden, a rebuttable presumption of discrimination arises. *See* P.R. Laws Ann. tit. 29, § 148; *see also Mejias Miranda,* 120 F.Supp.2d at 173.

Law 100 sets forth the following presumption of employer liability:

> Any of the acts mentioned in the preceding sections shall be presumed to have been committed in violation of [section] 146 . . . of this title, whenever the same shall have been performed without good cause. This presumption shall be of a controvertible character.

P.R. Laws Ann. tit. 29, § 148. *Mercado-Reyes v. City of Angels, Inc.*, 320 F. Supp. 3d 344, 348–49 (D.P.R. 2018). Law 100 does not define "just cause." To fill this gap, courts look to Law 80's guidelines regarding justified dismissals. *Hoyos,* at 207. The employer may rebut this presumption by proving by a preponderance of the evidence that discriminatory animus did not motivate the challenged employment action. *Hoyos,* at 206. If the employer rebuts the presumption, then the employee bears the burden of proving discrimination. *Id.*

Law 3 protects employees from pregnancy-related employment discrimination. *See* P.R. Ann. tit. 29 § 469; *Medina v. Adecco*, 561 F.Supp.2d 162, 174 (D.P.R. 2008).

"Courts analyze discrimination claims under Law [ ] 3 . . . like a Title VII discrimination cause of action." *Pagán–Alejandro v. P.R. ACDelco Serv. Ctr., Inc.*, 468 F. Supp. 2d 316, 328 (D.P.R. 2006) (internal citation omitted).

Finally, Law 69 deals with discrimination in employment on the basis of sex and specifically prohibits gender discrimination. P.R. Ann. tit. 29 § 1321.

Here, Ferrer established that: she suffered an adverse employment action because she was terminated and some basic fact substantiating the type of discrimination alleged because she was pregnant and gave birth. Plaintiff also presents sufficient evidence that the adverse employment action was not justified. For example, Ferrer presents evidence that Raíces terminated her assignment despite her numerous positive performance evaluations and that it did so shortly after her return from maternity leave *and* after she complained of an inadequate space to express breastmilk. With this evidence, the burden shifts to Raíces to prove that discriminatory animus did *not* motivate the termination.

The Court again borrows from its Title VII analysis to determine whether Raíces carries its burden. Just like in Ferrer's Title VII discriminatory termination claims, genuine issues of fact remain as to the true reason behind Raíces' decision to terminate Ferrer's assignment and whether she was terminated on the basis of her pregnancy and, therefore, whether her termination was unjustified. Raíces thus fails to carry its burden of persuasion at this time, and, consequently, summary judgment on Ferrer's Law 100 claim is unwarranted. The Court reaches the same conclusion with respect to Ferrer's Law 69 and Law 3 claims. *See Mejias Miranda,* 120 F.Supp.2d at 174–75 (retaining Laws 69 and 3 claims where Law 100 claim survives summary judgment); *Medina v. Adecco*, 561 F. Supp. 2d 162, 175 (D.P.R. 2008) (issues of fact preclude summary judgment of Law 100 claims and, reaching the same conclusion for Law 3 and Law 69 claims).

c.     Puerto Rico Law 115

Ferrer contends that Raíces retaliated against her by terminating her temporary assignment in violation of Law 115. In general, this statute makes it unlawful for the employer to discharge, threaten, or discriminate against an employee regarding terms, conditions, compensation, location, benefits or privileges of employment should the

employee *offer or attempt to offer any testimony, expression or information before a legislative, administrative or judicial forum in Puerto Rico. See* P.R. Laws Ann. tit. 29 § 194(a) (emphasis added). The statute imposes an obligation on the employee to establish, through direct or circumstantial evidence, a *prima facie* case proving that: he or she (a) participated in an activity protected by §§194 et seq. and that (b) he or she was subsequently dismissed or suffered an adverse employment action. *Id. Feliciano Martes v. Sheraton Old San Juan*, 182 D.P.R. 368, 2011 PR Sup. LEXIS 89 (P.R. 2011); *Lupu v. Wyndham El Conquistador Resort & Golden Door Spa*, 524 F.3d 312, 313 (1st Cir. 2008). *See generally Hoyos v. Telecorp Commcns, Inc.,* 405 F.Supp.2d 199, 207 (D.P.R.2005); *Rivera Rodriguez v. Sears Roebuck De P.R., Inc.,* 367 F.Supp.2d 216, 230 (D.P.R.2005).

Since Ferrer's employment was terminated, it is apparent that she was subjected to an adverse employment action. Notwithstanding that, however, Ferrer did not present any evidence, as she should have, that she participated in an activity protected by §194(a). On this record, there is no evidence that Ferrer "offer[ed] or attempt[ed] to offer, verbally or in writing, any testimony, expression or information before a legislative, administrative, or judicial forum in Puerto Rico." P.R. Laws Ann. tit. 29, § 194a(a). That Ferrer allegedly complained to Raíces and JFY regarding the lack of an adequate space for breastfeeding or milk extraction is of no consequence: Law 115 *only* covers employees who have testified or attempted to testify before an administrative, legislative or judicial body. *Villanueva–Batista v. Doral Financial,* 357 Fed.Appx. 304, 306 (1st Cir.2009); *Pabón–Ramírez v. MMM,* 2013 WL 1797041, at *9 (D.P.R. April 29, 2013); *Feliciano Martes,* 182 D.P.R. at 393.

Simply put, there is no evidence that Ferrer offered or attempted to offer testimony or information either to a legislative, administrative, or judicial forum. In other words, there is no evidence that Ferrer made any complaints to the pertinent entities listed in the statute or that she told anyone that she intended to go to the authorities. That is fatal to Ferrer's Law 115 claim because she fails to satisfy the requisite *prima facie* case as she did not establish that she participated in protected activity covered by this law.

Because Ferrer fails to point to any protected conduct that serves as a basis for her claims of retaliation under Law 115, she fails to meet her burden of establishing a *prima facie* case of retaliation under this statute. Accordingly, summary judgment is appropriate on Ferrer's Law 115 claim. *See e.g. Lupu v. Wyndham El Conquistador Resort & Golden Door Spa*, 524 F.3d 312, 2008 U.S. App. LEXIS 9311 (1st Cir. P.R. 2008) (affirming dismissal of plaintiff's Law 115 claims because employee never participated in an activity protected by the statute, namely, §194a); *Rodriguez-Quinones v. Lehigh Safety Shoe, Co.*, 736 F. Supp. 2d 445, 2010 U.S. Dist. LEXIS 94275 (D.P.R. 2010) (dismissing on summary judgment plaintiff's retaliation claims because employee failed to point to any protected conduct that served as a basis for his Law 115 claims for retaliation; *Hoyos v. Telecorp Communs., Inc.*, 405 F. Supp. 2d 199, 2005 U.S. Dist. LEXIS 33952 (D.P.R. 2005), aff'd, 488 F.3d 1, 2007 U.S. App. LEXIS 11625 (1st Cir. 2007) (granting summary judgment on Law 115 claim because there was no evidence that a terminated employee offered or attempted to offer testimony or information either to a legislative, administrative, or judicial forum); *Velez v. Janssen Ortho LLC*, 389 F. Supp. 2d 253, 2005 U.S. Dist. LEXIS 23134 (D.P.R. 2005), aff'd, 467 F.3d 802, 2006 U.S. App. LEXIS 27272 (1st Cir. 2006) (affirming district court's decision to grant summary judgment in favor of former employer because there was an absence of prima facie causation; there was no protected activity).

Based on the foregoing, Ferrer's claim pursuant to Law 115 is hereby **DISMISSED with prejudice.**

### d.   Articles 1802 and 1803

Plaintiff alleges entitlement to recovery of damages under Articles 1802 and 1803 of Puerto Rico's Civil Code. Article 1802 is Puerto Rico's general tort statute. The statute provides that a person who "causes damages to another through fault or negligence" shall be liable in damages. P.R. Laws Ann. tit. 31, § 5141. Article 1803 applies the principle of *respondeat superior* to Article 1802 claims. P.R. Laws Ann. tit. 31 § 5142; *Pagán–Cólon v. Walgreens of San Patricio, Inc.,* 697 F.3d 1, 16 (1st Cir. 2012).

Both Raíces and JFY request the summary dismissal of these claims arguing that Ferrer is barred from recovering damages under Articles 1802 and 1803 because her claims arise under Title VII and Puerto Rico's special employment statutes. Indeed, if

Ferrer seeks damages under the general tort statute for conduct covered by the federal and local specific labor laws that she invokes in this suit, she cannot prevail.

As the Puerto Rico Supreme Court, and courts in this District have held, to the extent that a specific labor or employment law covers the conduct for which a plaintiff seeks damages, he is barred from using *the same conduct* to also bring a claim under Article 1802. *Santana-Colon v. Houghton Mifflin Harcout Pub. Co.*, 81 F. Supp. 3d 129, 140 (D.P.R. 2014). *See also Pagán Colón v. Walgreens of San Patricio, Inc.,* 2014 T.S.P.R. 20, at *4–*5, 2014 WL 782822; *Nieves Pérez v. Doctors' Center,* 2011 WL 1843057, at *7 (D.P.R. May 16, 2011); *Rosario v. McConnell Valdes,* 2008 WL 509204, *2 (D.P.R. Feb. 21, 2008). An additional claim under Article 1802 may *only* be brought by the employee-plaintiff if it is based on tortious or negligent conduct *distinct* from that covered by the specific labor law(s) invoked." *See Denis Rosario v. McConnell Valdes,* Civil 07–1508CCC, 2008 WL 509204, **1–2, 2008 U.S. Dist. LEXIS 13113, at *3–6 (D.P.R. Feb. 21, 2008); *Medina v. Adecco*, 561 F. Supp. 2d 162, 175–76 (D.P.R. 2008).

Based on the allegations, and evidentiary material, it is unclear what Ferrer is claiming under these articles. Undoubtedly, Ferrer bases her Articles 1802 and 1803 claims on the exact same conduct that supports her employment discrimination claims under Title VII and Puerto Rico supplemental laws. She alleges no independently tortious conduct by Raíces or JFY that would make these claims plausible. Accordingly, the Court must **DISMISS with prejudice** Ferrer's Articles 1802 and 1803 claims.

e.      <u>Puerto Rico Law 379</u>

In the complaint, Ferrer claims that Defendants failed to compensate her for unpaid wages related to *overtime* and *vacation* leave that she was allegedly entitled to. There are however no specific allegations in the Complaint to substantiate such a claim. Moreover, and different from the Complaint, in Ferrer's response in opposition to Defendants' motions for summary judgment, Ferrer argues, for the first time, that her claims related to unpaid wages pertain to her *meal periods* but she fails to state any legal authority which would entitle her to relief and also fails to set forth specific factual

allegations related therewith.[36] Defendants, on the other hand, claim that Ferrer was fully compensated for all the hours worked by her at Raíces.

Puerto Rico Law 379 requires employers to pay overtime compensation at a rate of two times regular pay for work in excess of eight hours per day and forty hours per week. P.R. Laws Ann. tit. 29 §§ 271, 274 (2003). *Velazquez Fernandez v. NCE Foods, Inc.*, 405 F. Supp. 2d 179, 195 (D.P.R. 2005), *aff'd,* 476 F.3d 6 (1st Cir. 2007).

Both Raíces and JFY argue that summary judgment should be granted dismissing all claims related to unpaid wages because Ferrer has absolutely no evidence supporting any claim for unpaid wages. The record reveals that Defendants are correct.

At the outset, Ferrer does such a poor job of alleging a claim of unpaid wages that the Court has trouble construing what Ferrer is specifically claiming and under what statute. It should go without saying that courts deem waived claims not made or claims adverted to in a cursory fashion, unaccompanied by developed argument. *Rodriguez v. Municipality of San Juan*, 659 F.3d 168, 175 (1st Cir. 2011). *See Tejada–Batista v. Morales,* 424 F.3d 97, 103 (1st Cir. 2005) (stressing that "[a]n argument not seriously developed in the opening brief" is lost); *see also Grigous v. Gonzáles,* 460 F.3d 156, 163 (1st Cir. 2006); *Conto v. Concord Hosp., Inc.,* 265 F.3d 79, 81–82 (1st Cir. 2001). And the Court considers waived arguments "confusingly constructed and lacking in coherence." *United States v. Eirby,* 515 F.3d 31, 36 n. 4 (1st Cir.2008). Judges are not mind-readers, so parties must spell out their issues clearly, highlighting the relevant facts and analyzing on-point authority. *See United States v. Bongiorno,* 106 F.3d 1027, 1034 (1st Cir. 1997); *see also Rodríguez v. Señor Frog's de la Isla, Inc.,* 642 F.3d 28, 39 (1st Cir. 2011); *Rodríguez–García v. Miranda–Marín,* 610 F.3d 756, 766 n. 10 (1st Cir. 2010), *cert. denied,* —— U.S. ——, 131 (2011); *Janeiro v. Urological Surgery Prof'l Ass'n,* 457 F.3d 130, 143 n. 9 (1st Cir. 2006). The Court therefore finds that Ferrer's unpaid wages claims are waived.

Even assuming, based on her latest pleading, that is, her response in opposition to summary judgment, that she "narrowed down" her claim to allege that she is entitled to meal period compensation, Ferrer's claim hinges only on that conclusory statement,

---

[36] Puerto Rico requires the provision of a "meal period" to employees "not before the conclusion of the third, nor after the commencement of the sixth consecutive hour of work." 29 L.P.R.A. § 283.

which clearly is not enough. Ferrer's claim that she is entitled to unpaid wages has no evidentiary support.

First, and what is fatal to her claims, Ferrer does *not* dispute that she has *no* evidence to prove a claim for unpaid wages. Specifically, Ferrer admitted the following statement proposed by Raíces: "Plaintiff does *not* have any admissible evidence or documents to support her assertion of unpaid wages and tips, nor did she make any formal claim" regarding unpaid wages. (Docket No. 103 at 45 and Docket No. 115 at 53). Second, Ferrer admitted during her deposition that she did *not* remember whether there was time worked by her at Raíces that she was *not* compensated for. (*See* Docket No. 108, ¶75 and Docket No. 125, ¶75). Third, Ferrer also admitted during her deposition that she did *not* remember whether she made any claim to JFY regarding unpaid wages or unpaid tips.

In a futile attempt to survive summary judgment on these claims, Ferrer offers *one* piece of "evidence." In a footnote, Ferrer points to what appears to be a "copy and paste" of some sort of chart presumably of some record from November 2015 and December 2015 regarding someone's "breaks." There is nothing in the information provided demonstrating that such "records" pertain to Ferrer's employment at Raíces. Furthermore, nowhere in the "copy pasted" footnote does it show that the "information" offered reflects an official employment document either from Raíces or JFY concerning Ferrer's employment. Indeed, the "copy pasted" material offered by Ferrer is not admissible evidence, as is required at this stage. And, even taking all inferences in Ferrer's favor, with this "evidence" no reasonable fact finder could infer a claim of unpaid wages.

Like the First Circuit said, Plaintiff must give the Court the "'raw materials'" (transcripts spring quickly to mind) so that we can do our work, or they may lose as a consequence." *See, e.g., Rodríguez,* 642 F.3d at 37 (citing *Campos–Orrego v. Rivera,* 175 F.3d 89, 93 (1st Cir. 1999), and *Moore v. Murphy,* 47 F.3d 8, 10–12 (1st Cir. 1995)). Ferrer's handling of her unpaid wages claims falls short of meeting her burden. Ferrer neither provides the necessary caselaw nor reasoned or developed analysis to show that she is entitled to any relief concerning unpaid wages. *See also United States v.*

*Zannino,* 895 F.2d 1, 17 (1st Cir.1990) (warning that it is not enough for litigants to mention arguments "in the most skeletal way, leaving the court to do counsel's work").

It is known that summary judgment may be appropriate if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." *Forestier Fradera v. Municipality of Mayaguez,* 440 F.3d 17, 21 (1st Cir.2006) (quoting *Benoit v. Technical Mfg. Corp.,* 331 F.3d 166, 173 (1st Cir.2003)).

Plaintiff fails to offer sufficient evidence to support her claims for unpaid wages, which is necessary at the summary judgment stage. Therefore, summary judgment **DISMISSING with prejudice** Plaintiff's claims for unpaid wages under local statutes is warranted.

C.     Analysis of claims against JFY

Ferrer's discriminatory and retaliatory termination claims against Raíces under Title VII and Puerto Rico Laws 80, 100, 69 and 3 survive summary judgment. Because Ferrer seeks to impose liability on JFY for Raíces' decision to terminate her temporary assignment, the Court now discusses her claims against the temporary agency, JFY.

**1.     Title VII**

Ferrer first claims that JFY is liable under Title VII for Raíces' decision to terminate her employment because JFY was Ferrer's joint employer. The Court can easily dispose of this claim because as it mentioned before, based on the undisputed facts of this case, JFY cannot be considered Ferrer's employer or joint employer for Title VII purposes. Because Title VII liability attaches *only* in the event of a covered employment relationship, *Camacho v. P.R. Ports Auth.*, 369 F.3d 570, 573 (1st Cir. 2004), Ferrer cannot prevail under the theory of joint employer liability. For this reason alone, summary judgment is warranted in JFY's favor on Ferrer's claims for discriminatory and retaliatory termination under Title VII. *See also Medina v. Adecco*, 561 F. Supp. 2d 162, 178 (D.P.R. 2008).

Accordingly, JFY is entitled to summary judgment on all claims against it under Title VII. Ferrer's Title VII claims against JFY are therefore **DISMISSED with prejudice**.[37]

---

[37] Although Ferrer's Title VII claims against JFY fail as a matter of law, the Court is compelled to comment on her claim that JFY is liable under the theory of joint employer because it knew of the

## 2.    Supplemental law claims

Ferrer also lodges claims against JFY pursuant to Puerto Rico Law 80, Law 100, Law 69 and Law 3. JFY argues that summary judgment is warranted in its favor on all such claims because there is no evidence of any action taken by JFY contrary to such laws. Borrowing from this District Court's decision in *Medina v. Adecco*, 561 F. Supp. 2d 162, 179 (D.P.R. 2008), which is directly on point on this matter, the Court can quickly dispense with each of these claims.

In this case, it is an uncontested fact that Ferrer's employment was terminated because Raíces specifically requested that her temporary assignment not be renewed. Raíces made the decision to terminate Ferrer's assignment at the restaurant. Raíces communicated its decision to JFY and JFY merely executed it. JFY was not involved in the decision to terminate Ferrer. It is JFY's contention that the *only* reason for not renewing Ferrer's temporary placement at Raíces was that Raíces, its client, requested JFY not to renew the same based on performance issues with Ferrer, namely, her

---

alleged discriminatory conduct (complaint about lactation) and purportedly failed to take prompt corrective measures within its control. Ferrer exclusively cites to the EEOC's interpretation for her proposition. *See* EEOC Notice No. 915.002, Enforcement Guidance: Application of EEO Laws to Contingent Workers Placed by Temporary Employment Agencies and Other Staffing Firms (Dec. 3, 1997), 1997 WL 33159161, at *17 (delineating circumstances in which staffing firm may be liable for client company's discrimination). Ferrer does not point to any applicable caselaw or legal authority showing that she is right and JFY failed to meet its legal obligations. Assuming, *arguendo*, that JFY had a legal obligation in this respect, Ferrer's claim cannot prevail.

The Court agrees with Ferrer that there is evidence showing that she gave notice to JFY about her concerns regarding an agreeable space to express breastmilk. Indeed, Ferrer spoke to Bárbara Torres from JFY on December 2, 2015 and told her that she was driving to her home in Carolina during her breaks to express breastmilk because she did not like the place offered by Raíces for that purpose. Ferrer also told Torres that she spoke with the managers at Raíces regarding her concerns.

The undisputed facts also show that immediately after Ferrer notified JFY of her complaints, JFY personnel contacted management at Raíces and inquired on the matter. More specifically, Betzaida Pérez from JFY contacted Raíces' managerial personnel on the same day it learned of Ferrer's claims and inquired on the subject. Pérez was told by Raíces that Ferrer was given the time necessary for milk extraction and that she was offered the administrative office but that she preferred to go home to express breastmilk. JFY claims that it deemed as reasonable the response given by Raíces. In addition, Ferrer did not contest the fact that, in addition to that one instance where she expressed her concerns to JFY, she never again brought any related "issue" to JFY's attention, even after she was terminated.

Based on the foregoing, there is no evidentiary support on this record for Ferrer's proposition that JFY failed to take *prompt* corrective action within its *control* after it was placed on notice of Ferrer's complaints. To the contrary, there is evidence that JFY immediately contacted Raíces and inquired as to Ferrer's complaints. Absent any reference from Ferrer pinpointing any legal authority delineating JFY's legal obligation under these circumstances, and mindful that Raíces controlled Ferrer's working conditions, and determined the space offered to her for milk extraction, in the Court's view, this constitutes taking prompt appropriate measures within JFY's control after being notified of Ferrer's concerns.

alleged pattern of tardiness. JFY argues that it had no choice in the matter and was bound to implement Raíces' decision. And, so it did. Although it may seem like an unpleasant defense, the truth is that Raíces, *not* JFY, terminated Ferrer's temporary employment. Had it not been for Raíces' request, Ferrer's employment would not have been terminated back then.

In sum, it is undisputed that Ferrer's employment was terminated because Raíces so requested it. Accordingly, like the *Adecco* Court held in identical circumstances, liability for Ferrer's allegedly unjustified and discriminatory termination falls upon Raíces. *Medina v. Adecco*, 561 F. Supp. 2d 162, 179 (D.P.R. 2008); *See* P.R. Laws Ann. tit. 29, § 575b ("[W]ith regard to the legislation prohibiting job discrimination . . ., as well as the legislation which regulates unjustified dismissal, whoever discriminates against or dismisses the employee . . ., be it the temporary employment company or the client company, shall answer for their compliance.").

Based on the foregoing, JFY is entitled to summary judgment on Ferrer's claims pursuant to Puerto Rico Laws 80, 100, 69, and 3 arising out of the termination of her temporary assignment at Raíces. These claims are hereby **DISMISSED with prejudice**.

Ferrer's Laws 80, 100, 69, and 3 claims against JFY arising out of its *own* conduct suffer the same fate. From what the Court can make out from Ferrer's pleadings, Ferrer mainly claims that JFY failed to take corrective action after Ferrer complained to JFY that Raíces did not offer her an agreeable space to breastfeed or express breastmilk. Without any evidence, Ferrer makes the giant leap of arguing that, therefore, JFY had a reason to believe that Raíces' decision to terminate her resulted from a discriminatory or retaliatory animus. Ferrer's argument does not hold water.

First, Ferrer offers no evidence that JFY engaged in any conduct violative of Law 80. For example, Ferrer does not dispute that her termination stemmed from Raíces' request. Even assuming that Ferrer could show that JFY took an adverse employment action against her, Ferrer did not offer a shred of evidence to show that any of JFY's actions resulted from illegal conduct that Law 80 protects against. Absent such a showing, Ferrer cannot carry her initial burden under Law 80.

Second, Ferrer offers no evidence to sustain her Laws 100, 69, and 3 claims against JFY for its own actions. Each law requires Ferrer to make some showing that an adverse employment action resulted from discriminatory conduct because of her pregnancy or, in this case, lactation. Even assuming Ferrer could show that JFY took an adverse employment against her, she offers no evidence whatsoever to demonstrate that any of JFY's actions resulted from discriminatory conduct. Absent such evidence, she fails to meet her initial burden under Puerto Rico Laws 100, 69, and 3.

Simply put, and that which is fatal to Ferrer's supplemental claims against JFY, there is no evidence showing that JFY's employment decisions were not made for "good cause" or that they were motivated by discriminatory animus. In light thereof, JFY is also entitled to summary judgment on Ferrer's Puerto Rico Laws 80, 100, 69, and 3 claims arising out JFY's own conduct. These claims are therefore **DISMISSED with prejudice**.

Ferrer also asserts Law 115 claims against JFY. The Court can quickly dispense with this claim because it previously held above that Ferrer fails to point to any protected conduct that serves as a basis for her claims of retaliation under Law 115. Therefore, Ferrer fails to meet her burden of establishing a *prima facie* case of retaliation under this statute. Accordingly, the **DISMISSAL** of her Law 115 claims against JFY is warranted.

To conclude, Ferrer has failed to demonstrate that any of JFY's conduct violated federal or local employment laws. Therefore, the Court must **DISMISS** her Articles 1802 and 1803 claims. *See Medina v. Adecco,* 561 F. Supp. 2d 162, 179 (D.P.R. 2008); *Velez v. Janssen Ortho LLC,* 389 F.Supp.2d 253, 265 (D.P.R.2005) ("[I]nasmuch as the conduct complained of does not violate any of the applicable employment laws it cannot alternatively constitute a tort under Article[ ] 1802 . . . ."), *aff'd on other grounds,* 467 F.3d 802 (1st Cir.2006).

## V. <u>Conclusion</u>

For the reasons set forth above, the Court **GRANTS in part** and **DENIES in part** Raíces' motion for summary judgment at Docket No. 102 and **GRANTS in its entirety** JFY's motion for summary judgment at Docket No. 107.

Accordingly, the Court **DISMISSES with prejudice** Ferrer's Puerto Rico Law 115 and Articles 1802 and 1803 claims against Raíces. On the other hand, Ferrer's Title VII discriminatory and retaliatory termination claims against Raíces, as well as her claims pursuant to Puerto Rico Laws 80, 100, 69, and 3 survive summary judgment.

As to JFY, the Court **DISMISSES with prejudice** all claims against that party.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 13th day of December 2019.


_**s/Marshal D. Morgan**_
MARSHAL D. MORGAN
United States Magistrate Judge